# ORIGINAL

RECEIPT #_____
AMOUNT $_____ N/A
SUMMONS ISSUED Y-6
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE____3-17-05

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| **Plaintiff,** | : |
| | : |
| v. | : |
| | : |
| T. GENE GILMAN, STEVEN A. GILMAN, ARBOR SECURITIES, LTD., and FINANCIAL LINKS, INC., | : |
| **Defendants,** | : |
| and | : |
| TRADETEK, LTD. and COMMONWEALTH FINANCIAL HOLDINGS, INC. | : |
| **Relief Defendants.** | : |

**CIVIL ACTION NO.**

**TRIAL BY JURY DEMANDED**

# 05  10512 REK

MAGISTRATE JUDGE_____

## COMPLAINT

1.    The plaintiff Securities and Exchange Commission (the "Commission") files this complaint and alleges the following:

## SUMMARY

2.    Between December 1998 and October 2003, T. Gene Gilman ("G. Gilman") and his son Steven A. Gilman ("S. Gilman") solicited approximately $20 million and misappropriated at least $14 million from approximately 40 people who invested funds with Arbor Securities, Ltd. ("Arbor Securities"), an unregistered broker-dealer which was established by and controlled by G. Gilman.

3.      G. Gilman operated Arbor Securities from an office in Needham, Massachusetts, and promoted the company as an offshore brokerage firm. He told prospective customers that he would establish individual brokerage accounts for them at Arbor Securities and would use their funds to trade the stocks of publicly traded U.S. companies.

4.      Instead of establishing individual accounts and investing clients' funds in public companies as represented, S. Gilman, on behalf of Arbor Securities and with the knowledge of G. Gilman, commingled and transferred customer funds into several foreign and domestic bank and brokerage accounts in the name of Arbor Securities, including accounts at defendant Financial Links, Inc. (Financial Links"). Financial Links was a registered broker-dealer that was indirectly owned and controlled by G. Gilman through his holding company, Commonwealth Financial Holdings, Inc. ("Commonwealth"). From these accounts, S. Gilman transferred customer funds to himself, to G. Gilman, and to private start-up companies that G. Gilman owned and controlled, including TradeTek, Ltd. ("TradeTek"), a software development company.

5.      In order to conceal these transfers, S. Gilman, on behalf of Arbor Securities and at the request of G. Gilman, generated and sent to customers, fictitious account statements that purported to identify specific stocks held in their supposedly individual brokerage accounts at Arbor Securities. The false account statements also misrepresented cash balances, and falsely stated that transactions in the accounts took place, when in reality they did not.

6.      The false account statements contained material omissions in that they failed to indicate that customer funds had been transferred to G. Gilman, to S. Gilman, or

2

to any of G. Gilman's companies. Further, the false account statements failed to accurately identify the stocks that were actually held and traded in Arbor Securities' various brokerage accounts, nor did they reveal the cash balances in those accounts or in Arbor Securities' various bank accounts.

7.    G. Gilman, S. Gilman, Arbor Securities, and Financial Links have, directly or indirectly, engaged in acts, practices, and courses of business which constituted and will constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder [15. U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5].

8.    Arbor Securities has, directly or indirectly, engaged in acts, practices, and courses of business which have violated, and G. Gilman and S. Gilman have aided and abetted its violations of, Section 15(a) of the Exchange Act [15 U.S.C. §78o(a)] and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6 (1) and (2)].

9.    Financial Links has, directly or indirectly, engaged in acts, practices, and courses of business which have violated, and G. Gilman and S. Gilman have aided and abetted violations its of, Section 15(c) of the Exchange Act [15 U.S.C. §78o(c)].

10.    Relief Defendant TradeTek has, by virtue of its conduct, directly or indirectly obtained funds to which it has no legitimate claim, and has been unjustly enriched thereby.

11.     Relief Defendant Commonwealth has, by virtue of its conduct, directly or indirectly obtained funds to which it has no legitimate claim, and has been unjustly enriched thereby.

12.     The Defendants, unless enjoined by this Court, will continue to engage in the acts, practices, and courses of business alleged herein, and in acts, practices and courses of business of similar purport and object.

## JURISDICTION AND VENUE

13.     The Commission brings this action pursuant to authority conferred upon it by Sections 20(b), (c) and (d) of the Securities Act [15 U.S.C. §§ 77t(b)-(d)], Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d)-(e)] and Sections 209(d) and 209 (e) of the Advisers Act [15 U.S.C. §§ 80b-9(d)-(e)] to enjoin the defendants from engaging in the transactions, acts, practices and courses of business alleged in this Complaint, and transactions, acts, practices and courses of business of similar purport and object, for disgorgement of illegally obtained funds and other equitable relief, and for civil money penalties.

14.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)], Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa], and Section 214 of the Advisers Act [15 U.S.C. §80b-14].

15.     The Defendants and the Relief Defendants, directly and indirectly, have made use of the mails, the means and instrumentalities of transportation and communication in interstate commerce, and the means and instrumentalities of interstate

4

commerce, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

16.    Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9], because certain of the transactions, acts, practices and courses of business constituting violations of the Securities Act, Exchange Act and Advisers Act have occurred within the District of Massachusetts.

## DEFENDANTS AND RELIEF DEFENDANTS

17.    T. Gene Gilman ("G. Gilman"), 61, resides in Newton, Massachusetts. He is the majority owner, CEO, Treasurer, and Chairman of the Board of Directors of relief defendant Commonwealth. As a registered representative and general securities principal with Financial Links, he holds Series 7 and 24 securities licenses and has over 15 years experience in the financial services industry. G. Gilman has worked at several small brokerage firms in the past.

18.    Steven A. Gilman ("S. Gilman"), 36, is the son of G. Gilman, and resides in San Francisco, California. He was, at all relevant times, the Manager, Secretary, and President of Arbor Securities, and the Secretary for Commonwealth. S. Gilman holds a Series 7 securities license.

19.    Arbor Securities, Ltd. ("Arbor Securities") was incorporated in the Bahamas in November 1998. It is neither registered with the Commission as a broker-dealer or investment adviser, nor is it registered with the Securities Commission of the Bahamas in any capacity. Its registered agent is a law firm located in Nassau. Arbor Securities is controlled by G. Gilman and S. Gilman.

5

20.    Financial Links, Inc. ("Financial Links"), is a North Carolina corporation, which is registered with the Commission as a broker-dealer. It is owned by Commonwealth, and has a branch office in Needham, Massachusetts.

21.    Commonwealth Financial Holdings, Inc. ("Commonwealth"), is a Delaware corporation headquartered in Needham, Massachusetts. For all relevant periods, it shared office space with Financial Links. Commonwealth has no employees, and serves merely as a holding company for TradeTek and Financial Links. G. Gilman owns and controls Commonwealth, and also serves as its CEO and Treasurer.

22.    TradeTek, Ltd. ("TradeTek"), is a Delaware corporation that purportedly develops direct execution electronic trading software. TradeTek is headquartered in Needham, Massachusetts, with offices adjacent to those shared by Financial Links and Commonwealth. On April 13, 2004, one of TradeTek's creditors filed an involuntary Chapter 7 petition in this district. On May 10, 2004, the bankruptcy court entered an order for relief commencing bankruptcy proceedings. Although a trustee has been appointed, upon information and belief, no schedules or statements of financial affairs have yet been filed.

## FACTS

### A.    Background and Representations to Investors

23.    Arbor Securities was incorporated in the Bahamas in November 1998 as a purported "international business company." S. Gilman was technically the only officer or employee of the company, and serves as its "Manager, Secretary, and President." Although he never held a formal position at Arbor Securities, G. Gilman indirectly

6

owned the company through a complex series of international trusts registered in Saint Kitts and Nevis.

24.    In 1999, G. Gilman used his holding company, Commonwealth, to purchase the registered broker-dealer firm Financial Links, which was headquartered in Raleigh, North Carolina.

25.    After G. Gilman purchased Financial Links, he established a branch office in Needham, at the same location from which he controlled Arbor Securities. G. Gilman was the general securities principal for the Needham office, and operated as a registered representative with Financial Links.

26.    S. Gilman was also a registered representative with Financial Links, but he did not service any of the company's brokerage accounts.

27.    G. Gilman promoted Arbor Securities as an offshore brokerage firm. He told prospective customers in the United States that he would manage their investments by establishing individual brokerage accounts for them at Arbor Securities and using their funds to trade the stocks of publicly traded U.S. companies. G. Gilman provided prospective customers with little specific information about Arbor Securities' operations, investment strategies, or policies regarding fees and commissions.

28.    Although some customers of Arbor Securities signed trading-authorization and account-opening forms in connection with the accounts at Arbor Securities, which they believed were being opened, these forms provided no meaningful information about the company itself. Without providing any specifics, the forms stated that commissions would be charged at "customary rates."

29.    G. Gilman operated Arbor Securities, solicited funds, and met with customers at an office in Needham, Massachusetts. Most of Arbor Securities' customers were elderly residents of the Boston metropolitan area who had longstanding personal and business relationships with G. Gilman. G. Gilman met personally with prospective customers and made oral representations to them, but did not distribute promotional materials describing Arbor Securities.

30.    Between December 1998 and October 2003, approximately 40 people invested at least $20 million through Arbor Securities. G. Gilman generally solicited funds from a local pool of friends and acquaintances, many of whom knew each other.

31.    G. Gilman solicited the investments by representing to his customers that he would establish individual brokerage accounts for them at Arbor Securities and use their funds to trade the stocks of publicly traded U.S. companies. G. Gilman, when he made the representations, intended to an subsequently did misappropriate the customers' funds. In fact, the funds were not deposited into accounts in the names of the customers.

**B.    Deposits of Customer Funds in Bank and Brokerage Accounts**

32.    Contrary to the representations to investors, between December 1998 and October 2003, S. Gilman, on behalf of Arbor Securities and with the knowledge of G. Gilman, commingled and deposited at least $20 million of customer funds in accounts held by or for the benefit of Arbor Securities with at least eight foreign and domestic banks and securities brokerage firms.

33.    Customers initially made checks payable to Arbor Securities, or directly wired funds into bank or brokerage accounts in the name of Arbor Securities. Thereafter, S. Gilman routinely transferred funds among the various accounts.

### 1.     Arbor Securities' Bank Accounts

34.     Between December 1998 and October 2003, without anyone advising the customers, and contrary to representations made to them, S. Gilman deposited customer funds into Arbor Securities' accounts at three small foreign banks based in the Bahamas and Antigua and Barbuda. Those banks were Surety Bank & Trust and Americas International Bank Corporation, both based in Nassau, and Antigua Overseas Bank, based in Antigua and Barbuda.

35.     Surety Bank & Trust and Americas International Bank went into liquidation in 2000 and 2001 respectively, and Arbor Securities customers' funds were lost in connection with those liquidations.

36.     Additionally, without anyone advising the customers, and contrary to representations made to them, S. Gilman transferred some funds from Arbor Securities' foreign accounts to two accounts held with domestic banks in the name of now-defunct shell companies that were owned and controlled by G. Gilman. From these accounts, S. Gilman transferred customer funds to himself, to G. Gilman, to companies owned and controlled by G. Gilman, or to brokerage accounts in the name of Arbor Securities.

### 2.     Arbor Securities' Brokerage Accounts

37.     In December 1998, without anyone advising the customers, and contrary to representations made to them, S. Gilman opened, and transferred customer funds into, a single brokerage account in the name of Arbor Securities at RBC Dominion Securities, Inc., a Canadian "investment dealer" registered with the Ontario Securities Commission ("OSC").

38.     Through an OSC-registered "investment adviser," Arbor Securities used this account to trade the stocks of various publicly traded U.S. companies, and to trade foreign currencies.

39.     In February 2000, Arbor Securities transferred the bulk of the funds remaining in the RBC Dominion Securities brokerage account to other brokerage accounts in the name of Arbor Securities at Financial Links.

40.     Between January 2000 and October 2002, without anyone advising the customers, and contrary to representations made to them, S. Gilman used customer funds to open four brokerage accounts in the name of Arbor Securities at Financial Links' Needham office. G. Gilman was the registered representative and branch manager in charge of those accounts.

41.     Registered representatives acting at G. Gilman's direction, used customer funds to trade the stocks of publicly traded U.S. companies, most of which were listed on either the Nasdaq Stock Market or the New York Stock Exchange. Financial Links was not, itself, a member of the New York Stock Exchange. Financial Links charged Arbor Securities fees and commissions in connection with these trades.

42.     In January 2002, without anyone advising the customers, and contrary to representations made to them, S. Gilman used customer funds to open a purported brokerage account in the name of Arbor Securities at Alliance Investment Management, Ltd., an investment management and brokerage company registered with the Securities Commission of the Bahamas, but not affiliated with G. Gilman or any of his companies.

43.     Arbor Securities did not use the Alliance Investment Management account to trade any stocks. At the request of S. Gilman, Arbor Securities customer

funds were deposited in a foreign bank account in the name of, and controlled by, Alliance Investment Management. Alliance Investment Management then wired funds from this account to Arbor Securities' accounts at Financial Links pursuant to written instructions from S. Gilman.

### C.    Additional Fraudulent Transfers of Customer Funds

44.    Between January 1999 and October 2003, instead of establishing individual accounts and investing in U.S. stocks as they represented to investors they would do, G. Gilman and S. Gilman fraudulently transferred approximately $12.7 million of customer funds via check and wire from Arbor Securities' various accounts to themselves, and to various entities owned and controlled by G. Gilman. A small portion of these funds were transferred from Arbor Securities' accounts at Financial Links to other accounts at Financial Links in the names of TradeTek and Commonwealth.

45.    Of this $12.7 million, G. Gilman and S. Gilman directly transferred approximately $9 million to TradeTek, a software development company that was owned and controlled by G. Gilman through his holding company, Commonwealth. From the time of its formation, TradeTek never generated sufficient revenues to cover its expenses and was never publicly traded. In order to cover TradeTek's expenses, S. Gilman, on behalf of Arbor Securities and with the knowledge of G. Gilman, transferred funds to TradeTek from Arbor Securities' various bank and brokerage accounts. TradeTek did not provide value in exchange for these funds and was unjustly enriched by the transfer.

46.    S. Gilman also transferred approximately $2.1 million to Apollo Eye Gear, an eyewear distributor owned and controlled by G. Gilman, and $200,000 to

Commonwealth. Commonwealth did not provide value in exchange for the $200,000 and was unjustly enriched by the transfer.

47.    Furthermore, S. Gilman used approximately $1.2 million of customer funds from Arbor Securities' various bank and brokerage accounts to pay various administrative expenses associated with TradeTek and Apollo Eye Gear.

48.    S. Gilman also transferred at least $175,000 of customer funds directly to himself and to G. Gilman.

49.    For most accounts, S. Gilman wrote the checks and/or signed wire transfer request forms. With respect to Arbor Securities' accounts at Financial Links, G. Gilman and S. Gilman both signed wire transfer request forms for each outgoing wire. S. Gilman signed as the customer representative for Arbor Securities and G. Gilman signed on behalf of Financial Links.

### D.    **Fraudulent Confirmations and Statements**

50.    In order to conceal the transfers, S. Gilman at his father's request generated, and sent to customers, false and fictitious account statements that purported to identify specific stocks held in individual brokerage accounts at Arbor Securities, as well as cash balances and periodic transactions in those accounts. The stocks and cash balances described in the confirmations did not exist in the accounts, the individual accounts themselves did not exist, and the transactions were fictional. The false account statements also contained material omissions in that they failed to disclose that customer funds had been transferred to G. Gilman, S. Gilman, and/or to G. Gilman's companies.

51.     Additionally, the account statements failed to indicate that customers were being charged fees and/or commissions in connection with the purported trading activity in their accounts.

### E.     Losses and Fictitious Returns on Investments

52.     On behalf of Arbor Securities, G. Gilman and S. Gilman returned approximately $6 million to customers, representing to the customers that the funds were returns on their investments.  Additionally, Arbor Securities incurred trading losses of approximately $1 million in connection with its brokerage accounts at RBC Dominion Securities and Financial Links.  Finally, Arbor Securities lost approximately $400,000 of customer funds in connection with the liquidation of two foreign banks where it held accounts.

53.     In late 2003, after soliciting the $20 million from its customers, Arbor Securities established a short-lived, now defunct, website, which stated generically that the company was a "security broker/dealer offering highly personalized services to individual customers."

### COUNT I—FRAUD
### Violations of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]

54.     Paragraphs 1 through 53 are hereby realleged and are incorporated herein by reference.

55.     From at least December 1998 through at least October 2003, Defendants G. Gilman, S. Gilman, Arbor Securities and Financial Links, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly,

employed devices, schemes and artifices to defraud purchasers of such securities, all as more particularly described above.

56.     The Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud.

57.     In engaging in such conduct, the Defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth. By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II—FRAUD
### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act
### [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

58.     Paragraphs 1 through 53 are hereby realleged and are incorporated herein by reference.

59.     From at least December 1998 through at least October 2003, Defendants G. Gilman, S. Gilman, Arbor Securities and Financial Links, in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

a)      obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

b)      engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities,

all as more particularly described above.

14

60.     By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

### COUNT III—FRAUD
### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder  [17 C.F.R. § 240.10b-5]

61.     Paragraphs 1 through 53 are hereby realleged and are incorporated herein by reference.

62.     From at least December 1998 through at least October 2003, Defendants G. Gilman, S. Gilman, Arbor Securities and Financial Links, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

        a)     employed devices, schemes, and artifices to defraud;

        b)     made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

        c)     engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities,

all as more particularly described above.

63.     The Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.  In engaging in such conduct, the Defendants acted with scienter,

that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

64.    By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### COUNT IV—EFFECTING SECURITIES TRANSACTIONS FOR THE ACCOUNT OF OTHERS WITHOUT BEING REGISTERED WITH THE COMMISSION AS A BROKER-DEALER, AND AIDING AND ABETTING THEREOF
### Violations of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]

65.    Paragraphs 1 through 53 are hereby realleged and are incorporated herein by reference.

66.    Defendant Arbor Securities, aided and abetted by G. Gilman and S. Gilman, directly or indirectly: (i) engaged in the business of effecting transactions in securities for the account of others;  (ii) while other than a natural person or a natural person not associated with a broker or dealer which was a person other than a natural person (other than such a broker or dealer whose business was exclusively intrastate and who does not make use of any facility of any national securities exchange); and, (iii) made use of the mails or any means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) without being registered in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

67.    By reason of the transactions, acts, omissions, practices and courses of business set forth herein, Defendant Arbor Securities, aided and abetted by G. Gilman

and S. Gilman, has violated, and unless enjoined will violate Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

### COUNT V—FRAUD BY INVESTMENT ADVISER
### AND AIDING AND ABETTING THEREOF
### Violations of Sections 206(1) and 206(2) of the Advisers Act
### [15 U.S.C. § §80b-6(1), (2)]

68.    Paragraphs 1 through 53 are hereby realleged and are incorporated herein by reference.

69.    Arbor Securities was at all relevant times an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

70.    Arbor Securities, aided and abetted by G. Gilman and S. Gilman, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce: (a) has acted knowingly or recklessly, has employed devices, schemes, or artifices to defraud; or (b) has engaged in transactions, practices, or courses of business which operated as fraud or deceit upon a client or prospective client.

71.    By reason of the transactions, acts, omissions, practices and courses of business set forth herein, Defendant Arbor Securities, aided and abetted by G. Gilman and S. Gilman, has violated, and unless enjoined will violate Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1),(2)].

### COUNT VI—MANIPULATIVE, DECEPTIVE OR FRAUDULENT ACTS
### BY A BROKER OR DEALER, AND AIDING AND ABETTING THEREOF
### Violations of Sections 15(c)(1) of the Exchange Act
### [15 U.S.C. §78o(c)]

72.    Paragraphs 1 through 53 are hereby realleged and are incorporated herein by reference.

17

73.     Financial Links was at all relevant times a broker or dealer as those terms are defined by Sections 3(a)(4) and 3(a)(5) of the Exchange Act [15 U.S.C. § 78c(a)(4), (5)].

74.     Financial Links, aided and abetted by G. Gilman and S. Gilman, directly or indirectly, by use of the mails or any means or instrumentality of interstate commerce, acted knowingly or recklessly, and effected transactions in, or induced or attempted to induce the purchase or sale of securities (otherwise than on a national securities exchange of which it was a member) by means of a manipulative, deceptive, or other fraudulent device or contrivance.

75.     By reason of the transactions, acts, omissions, practices and courses of business set forth herein, Defendant Financial Links, aided and abetted by G. Gilman and S. Gilman, has violated, and unless enjoined will violate Section 15(c) of the Exchange Act [15 U.S.C. §78o(c)].

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Commission, respectfully prays that the Court:

I.

Make findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

II.

Issue a permanent injunction enjoining defendant G. Gilman, and his agents, servants, employees, attorneys, and all persons in active concert or participation with him who receive actual notice of the order by personal service or otherwise, and each of them:

a. from violating Section 17(a) of the Securities Act [15 U.S.C. 77q(a)];

b. from violating Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5];

c. from aiding and abetting violations of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)];

d. from aiding and abetting violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2)]; and

e. from aiding and abetting violations of Section Section 15(c) of the Exchange Act [15 U.S.C. §78o(c)].

III.

Issue a permanent injunction enjoining defendant S. Gilman, and his agents, servants, employees, attorneys, and all persons in active concert or participation with him who receive actual notice of the order by personal service or otherwise, and each of them:

a. from violating Section 17(a) of the Securities Act [15 U.S.C. 77q(a)];

b. from violating Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5];

c. from aiding and abetting violations of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)];

d. from aiding and abetting violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2)]; and

e. from aiding and abetting violations of Section Section 15(c) of the Exchange Act [15 U.S.C. §78o(c)].

IV.

Issue a permanent injunction enjoining defendant Arbor Securities, and its agents, servants, employees, attorneys, and all persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise, and each of them:

a. from violating Section 17(a) of the Securities Act [15 U.S.C. 77q(a)];

b. from violating Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5];

c. from violating Section 15(a) of the Exchange Act [15 U.S.C. § 78o(b)]; and

d. from violating Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2)].

V.

Issue a permanent injunction enjoining defendant Financial Links, and its agents, servants, employees, attorneys, and all persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise, and each of them:

a. from violating Section 17(a) of the Securities Act [15 U.S.C. 77q(a)];

b. from violating Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5]; and

c. from violating Section 15(c)(1) of the Exchange Act [15 U.S.C. § 78o(b)].

VI.

Issue an Order requiring the defendants to provide an accounting, and requiring the defendants and relief defendants Commonwealth and TradeTek, to disgorge all ill-gotten gains and losses avoided as alleged in the Commission's Complaint, plus pay prejudgment interest thereon, provided that, for so long as any bankruptcy proceedings involving any such parties are pending, any such payment by these defendants or relief defendants shall be paid through their respective bankruptcy proceedings.

VII.

Issue an Order requiring defendants G. Gilman, S. Gilman, Arbor Securities, and Financial Links, pursuant to Section 20(d) of the Securities Act [15 U.S.C. 77t(d)] and Sections 21(d)(3) and 21A of the Exchange Act [15 U.S.C. 78u(d)(3) and 78u-1], to pay civil monetary penalties.

VIII.

The Commission hereby demands a trial by jury, on all claims.

IX.

Issue an Order that retains jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may have been entered or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

X.

Grant such other and further relief as may be necessary and appropriate.

RESPECTFULLY SUBMITTED,

Edward G. Sullivan
Senior Trial Counsel
Georgia Bar No. 691140

Matthew F. McNamara
Staff Attorney
Illinois Registration No. 6256382

COUNSEL FOR PLAINTIFF
U. S. SECURITIES AND EXCHANGE COMMISSION
3475 Lenox Road, N.E., Suite 1000
Atlanta, Georgia 30326-1234
(404) 842-7612
sullivane@sec.gov

05 - 0512 RCK

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| | |
|---|---|
| **I. (a) PLAINTIFFS** Securities and Exchange Commission | **DEFENDANTS** T. Gene Gilman, Steven A. Gilman, Arbor Securities, Ltd. and Financial Links, Inc. Defendants, and TradeTek, Ltd. and Commonwealth Financial Holdings Defendant Relief Defendants |
| **(b)** County of Residence of First Listed Plaintiff _____ (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant Middlesex (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number) Edward G. Sullivan SEC, 3475 Lenox Rd. NE Suite 1000, Atlanta, GA 30326  (404) 842-7612 | Attorneys (If Known) Thomas M. Hoopes, Kelly, Libby & Hoopes, 175 Federal Street, Boston, MA 02110 |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): Sections 17 (a) of the Securities Act of 1933 and 10(b) 15(a)(c) of the Securities Exchange Act + 206(1) and
Brief description of cause: Securities Fraud, Broker Dealer, Investment Advisor 206(2) of Investment Advisor Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 8 March 2005

SIGNATURE OF ATTORNEY OF RECORD  Edward G. Sullivan

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _S.E.C. v. T. Gene Gilman, et al._

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   [ ] I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [X] II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

   [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   [ ] IV.   220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   [ ] V.    150, 152, 153.

# 05 10512 REK

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _USA v. T. Gene Gilman, CR case to be filed 3/10/2005_

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]    NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

   YES [ ]    NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]    NO [X]

7. Do _all_ of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [X]    NO [ ]

   A.    If yes, in which division do _all_ of the non-governmental parties reside?

         Eastern Division [X]    Central Division [ ]    Western Division [ ]

   B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

         Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _Edward G. Sullivan_
ADDRESS _SEC, 3475 Lenox Rd. NE Suite 1000, Atlanta, GA 30326_
TELEPHONE NO. _404 842-7612_

(CategoryForm.wpd - 2/15/05)