# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 05-10512-REK |
| v. | : | |
| | : | |
| T. GENE GILMAN, STEVEN A. GILMAN, | : | |
| ARBOR SECURITIES, LTD., and | : | |
| FINANCIAL LINKS, INC., | : | |
| | : | |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| TRADETEK, LTD. and | : | |
| COMMONWEALTH FINANCIAL HOLDINGS, INC. | : | |
| | : | |
| Relief Defendants. | : | |

_____

## SEC'S MOTION FOR DEFAULT JUDGMENT, AND TO SET DISGORGEMENT , PREJUDGMENT INTEREST AND A CIVIL PENALTY AGAINST ALL DEFENDANTS, AND TO SET DISGORGEMENT AND PREJUDGMENT INTEREST AGAINST THE RELIEF DEFENDANTS

Plaintiff, Securities and Exchange Commission ("Commission" or "SEC") submits this motion, pursuant to Rule 55, Fed. R. Civ. P., for a default judgment against defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links, and against relief defendants TradeTek and Commonwealth. The Commission's argument supporting the Final Judgment against the defendants and relief defendant is fully set forth in its memorandum supporting this motion. This motion is also supported by the Declaration of William A. Rees attached to the memorandum in support of this motion. The Commission has also included a proposed Default Judgment Against Defendants T. Gene Gilman, Steven

A. Gilman, Arbor Securities and Financial Links and Against Relief Defendants TradeTek

and Commonwealth for the Court's consideration.

Dated:  March 17, 2006

Respectfully submitted,


/s/ Edward G. Sullivan
Edward G. Sullivan
Senior Trial Counsel


COUNSEL FOR PLAINTIFF
Securities and Exchange Commission
3475 Lenox Road, N.E., Suite 1000
Atlanta, Georgia 30326-1232
(404) 842-7612
sullivane@sec.gov

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————— :

SECURITIES AND EXCHANGE COMMISSION,   :
                                      :
                     Plaintiff,       :   CIVIL ACTION
                                      :   NO. 05-10512-REK
v.                                    :
                                      :
T. GENE GILMAN, STEVEN A. GILMAN,     :
ARBOR SECURITIES, LTD., and           :
FINANCIAL LINKS, INC.,                :
                                      :
                     Defendants,      :
                                      :
and                                   :
                                      :
TRADETEK, LTD. and                    :
COMMONWEALTH FINANCIAL HOLDINGS, INC. :
                                      :
              Relief Defendants.      :
—————————————————————— :

## <u>SEC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT, AND TO SET DISGORGEMENT , PREJUDGMENT INTEREST AND A CIVIL PENALTY AGAINST ALL DEFENDANTS, AND TO SET DISGORGEMENT AND PREJUDGMENT INTEREST AGAINST THE RELIEF DEFENDANTS</u>

Plaintiff, Securities and Exchange Commission ("Commission" or "SEC") submits this memorandum of law in support of its motion, pursuant to Rule 55, Fed. R. Civ. P., for a default judgment against defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities, Ltd. ("Arbor Securities") and Financial Links, Inc. ("Financial Links"), and against relief defendants TradeTek, Ltd. ("TradeTek") and Commonwealth Financial Holdings, Inc. ("Commonwealth").

## PROCEDURAL HISTORY

The facts are straightforward. The Complaint in this matter was filed on March 17, 2005. On March 22, 2005, defendant Steven A. Gilman was personally served with the Summons and Complaint at his residence at 67 Ford Street, San Francisco, California. Similarly, on May 25, 2005, defendants T. Gene Gilman, Arbor Securities and Financial Links, as well as relief defendants TradeTek and Commonwealth were served with the Summonses and Complaint by personal service on T. Gene Gilman at his residence at 133 Kennedy Memorial Drive in Waterville, Maine.

Neither the defendants nor the relief defendants sought extensions to file answers. Steven A. Gilman's answer was due not later than April 11, 2005. All other defendants and relief defendants were obligated to file answers or responsive pleadings not later than June 14, 2005. The four defendants and the two relief defendants have failed to answer or otherwise respond as required by the Federal Rules of Civil Procedure. The clerk entered defaults against the four defendants and the two relief defendants on March 2, 2006.

## ARGUMENT

### I.   A DEFAULT JUDGMENT IS APPROPRIATE

The entries of judgments by default are appropriate, against defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links, and against relief defendants TradeTek and Commonwealth. Defaults have been entered by the Clerk. Accordingly, the factual allegations of the Complaint, except those relating to damages, are taken as true. 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2688, p. 412 (2d ed. 1983); Thomson v. Wooster, 5 S. Ct. 788 (1885). Furthermore, the Declaration of William A. Rees, which has been provided by the Commission, provides

that from the Commission's investigation in this matter, none of the defendants or relief defendants is an infant or an incompetent. Similarly, no defendant or relief defendant in this case is a member of the military service of the United States. (Rees Declaration, ¶12).

## II.     FACTS TAKEN AS TRUE FOR DEFAULT JUDGMENT

The allegations of the Complaint, which are accepted as true for default purposes, can be summarized as follows:

--Between December 1998 and October 2003, T. Gene Gilman and his son Steven A. Gilman solicited approximately $20 million, and misappropriated at least $14 million from approximately 40 people who invested funds with Arbor Securities, Ltd. ("Arbor Securities"), an unregistered broker-dealer which was established by and controlled by G. Gilman.

--T. Gene Gilman operated Arbor Securities from an office in Needham, Massachusetts, and promoted the company as an offshore brokerage firm. He told prospective customers that he would establish individual brokerage accounts for them at Arbor Securities and would use their funds to trade the stocks of publicly traded U.S. companies.

--Instead of establishing individual accounts and investing clients' funds in public companies as represented, Steven A. Gilman, on behalf of Arbor Securities and with the knowledge of T. Gene Gilman, commingled and transferred customer funds into several foreign and domestic bank and brokerage accounts in the name of Arbor Securities, including accounts at defendant Financial Links. Financial Links was a registered broker-dealer that was indirectly owned and controlled by T. Gene Gilman through his

holding company, Commonwealth.   From these accounts, Steven A. Gilman transferred customer funds to himself, to T. Gene Gilman, and to private start-up companies that G. Gilman owned and controlled, including TradeTek, a software development company.

--In order to conceal these transfers, Steven A. Gilman, on behalf of Arbor Securities and at the request of T. Gene Gilman, generated and sent to customers, fictitious account statements that purported to identify specific stocks held in their supposedly individual brokerage accounts at Arbor Securities.  The false account statements also misrepresented cash balances, and falsely stated that transactions in the accounts took place, when in reality they did not.

--The false account statements contained material omissions in that they failed to indicate that customer funds had been transferred to T. Gene Gilman, to Steven A. Gilman, or to any of T. Gene Gilman's companies.  Further, the false account statements failed to accurately identify the stocks that were actually held and traded in Arbor Securities' various brokerage accounts, nor did they reveal the cash balances in those accounts or in Arbor Securities' various bank accounts.

--T. Gene Gilman, Steven A. Gilman, Arbor Securities, and Financial Links have, directly or indirectly, engaged in acts, practices, and courses of business which constituted and will constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder [15. U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5].

--Arbor Securities has, directly or indirectly, engaged in acts, practices, and courses of business which have violated, and T. Gene Gilman and Steven A. Gilman have

4

aided and abetted its violations of, Section 15(a) of the Exchange Act [15 U.S.C. §78o(a)] and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6 (1) and (2)].

--Financial Links has, directly or indirectly, engaged in acts, practices, and courses of business which have violated, and T. Gene Gilman and Steven A. Gilman have aided and abetted violations its of, Section 15(c) of the Exchange Act [15 U.S.C. §78o(c)].

--Relief Defendant TradeTek has, by virtue of its conduct, directly or indirectly obtained funds to which it has no legitimate claim, and has been unjustly enriched thereby.

--Relief Defendant Commonwealth has, by virtue of its conduct, directly or indirectly obtained funds to which it has no legitimate claim, and has been unjustly enriched thereby.

--The Defendants, unless enjoined by this Court, will continue to engage in the acts, practices, and courses of business alleged herein, and in acts, practices and courses of business of similar purport and object.

In support of this motion for default judgment, the Commission has included herewith the sworn Declaration of William A. Rees, pursuant to 28 U.S.C. §1746.  In his declaration, Rees states that he reviewed:  (A) account statements and wire transfer requests and confirmations from Penson Financial Services, Inc., the clearing broker for Financial Links; (B) documents produced by T. Gene Gilman to the U.S. Attorney's Office for the District of Massachusetts, including (i) a detailed memorandum dated January 5, 2004, and entitled "Fraudulent Use of Funds by T. Gene Gilman," which was

prepared by T. Gene Gilman at the request of the U.S. Attorney's Office, and which

summarizes the use of investor funds, (ii) account statements for various foreign and

domestic bank and brokerage accounts held in the names, or for the benefit of, Gene

Gilman, Steven Gilman, and companies that T. Gene Gilman owned and controlled,

including Arbor Securities, Ltd., TradeTek, Ltd. ("TradeTek"), Financial Links, and

Commonwealth Financial Holdings, Inc. ("Commonwealth"), (iii) investor lists, (iv)

financial statements and accounting documentation for various companies owned and

controlled by T. Gene Gilman, including Arbor Securities, TradeTek, Financial Links,

and Commonwealth, and (v) written correspondence with investors and financial

institutions; (C) the sworn investigative testimony of four former employees of Financial

Links and TradeTek; (D) documents produced by RBC Dominion Securities, Inc., an

"investment dealer" registered with the Ontario Securities Commission, including

account statements for an account in the name of Arbor Securities; and (E) documents

voluntarily produced to the Commission by investors in Arbor Securities, including

purported account statements generated and sent to them by Steven A. Gilman.  (Rees

Declaration, ¶ 3).  Rees Declaration establishes that from the Commission's investigation

and his review of the documents, that T. Gene Gilman and Steven A. Gilman solicited

and collected approximately $20 million from investors, in their scheme to defraud.

(Rees Declaration, ¶ 4).

Rees's Declaration also establishes that as described by the investors, and as

summarized by T. Gene Gilman in his January 5, 2004 memorandum entitled "Fraudulent

Use of Funds by T. Gene Gilman," and supported by the documents described above in

the preceding paragraph, T. Gene Gilman and Steven A. Gilman commingled and

transferred investor funds into several foreign and domestic bank and brokerage accounts in the name of, or for the benefit of, Arbor Securities. (Rees Declaration, ¶ 5). From the foreign and domestic bank and brokerage accounts in the name of or for the benefit of Arbor Securities, T. Gene Gilman and Steven A. Gilman transferred or caused to be transferred approximately $9 million to relief defendant TradeTek, and transferred or caused to be transferred approximately $200,000 to relief defendant Commonwealth. Since I know from the investigation that T. Gene Gilman and Steven A. Gilman jointly exercised control over these accounts and over TradeTek, disgorgement for TradeTek should be $9 million, which it owes jointly and severally with T. Gene Gilman and with Steven A. Gilman. Similarly, disgorgement against Commonwealth should be $200,000, which it owes jointly and severally with T. Gene Gilman and Steven A. Gilman. (Rees Declaration, ¶ 6).

The Rees Declaration also sets forth a $6 million reduction in disgorgement from the $20 million raised by the four defendants, to account for the amount repaid to investors, and concludes that the disgorgement from the four defendants should be $14 million to be owed by them jointly and severally. (Rees Declaration, ¶ 7). The SEC staff apparently considered other losses by the defendants of the investors funds, and various expenses but concluded that no further reduction was appropriate, since the fraud placed investor funds into the hands of the defendants which in equity they should be required to pay. (Rees Declaration, ¶ 8).

The declarant Rees also calculated prejudgment interest for the $14 million in disgorgement jointly and severally liable from T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links for the period November 1, 2003, through

February 28, 2006, at the interest rates used by the Internal Revenue Service for unpaid

balances (which changes quarterly, and for the relevant period herein ranged from a

low of 4% annually to a high of 7% annually).  During that period, the total

prejudgment interest on $14 million totals $1,681,718.26, for a combined total of

$15,681,718.26.  (Rees Declaration, ¶ 9).  He similarly calculated prejudgment interest

on the $9 million figure which is joint and several with TradeTek and the Gilmans

from November 1, 2003, through February 28, 2006, at the interest rates used by the

Internal Revenue Service for unpaid balances (which changes quarterly, and for the

relevant period herein ranged from a low of 4% annually to a high of 7% annually).

During that period, the total prejudgment interest on $9,000,000 totals $1,081,104.57,

for a combined total of $10,081,104.57.   (Rees Declaration, ¶ 10).  Finally, Rees

calculated prejudgment interest on the $200,000 owed jointly and severally by

Commonwealth and the Gilmans, from November 1, 2003, through February 28, 2006,

at the interest rates used by the Internal Revenue Service for unpaid balances (which

changes quarterly, and for the relevant period herein ranged from a low of 4% annually

to a high of 7% annually).  During that period, the total prejudgment interest on

$200,000 totals $24,024.57, for a combined total of $224,024.57. (Rees Declaration, ¶

11).

### III.  <u>VIOLATIONS</u>

  **A. T. Gene Gilman, Steven A. Gilman, Arbor Securities, and Financial Links Violated the Antifraud Provisions of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

Section 17(a) of the Securities Act prohibits a person, in the offer or sale of any

securities, from employing any device, scheme or artifice to defraud, making false or

misleading statements, or engaging in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the purchaser. Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit a person, in connection with the purchase or sale of any security, from employing any device, scheme or artifice to defraud, making false or misleading statements, or engaging in any act, practice or course of business that operates or would operate as a fraud or deceit upon any person.

T. Gene Gilman and Steven A. Gilman violated these provisions. T. Gene Gilman misrepresented to customers that Arbor Securities would establish individual brokerage accounts on their behalf and use their funds solely to trade the stocks of publicly traded U.S. companies. For his part, on behalf of Arbor Securities and at the request of T. Gene Gilman, Steven A. Gilman generated, and sent to customers, false account statements that purportedly identified specific stocks held in their individual brokerage accounts, as well as cash balances and periodic transactions in those accounts. However, instead of using customer funds as represented, Steven A. Gilman transferred those funds to himself, his father T. Gene Gilman, and the father's various companies.

Under general agency principles, a corporation can be held vicariously liable for the violations of federal securities laws committed by its principals. See, e.g., In re Centennial Technologies Litigation, 52 F. Supp. 2d 178, 181-86 (D. Mass. 1999). As the respective principal and indirect owner of Arbor Securities, Steven A. Gilman's and T. Gene Gilman's violations can be imputed to Arbor Securities. As the owner of Financial Links, T. Gene Gilman's conduct can be imputed to Financial Links. See id. Effectively, Arbor Securities, through Steven A. Gilman, generated false account statements that concealed the true use of customer funds. The underlying transfers of

funds were facilitated by Financial Links through the actions of both T. Gene and Steven A.Gilman. The Gilmans both signed wire transfer request forms for each wire transfer from Arbor Securities' accounts at Financial Links. Steven A. Gilman signed as the customer representative for Arbor Securities; T. Gene Gilman signed on behalf of Financial Links.

> **B.    Arbor Securities Violated the Antifraud Provisions of Sections 206(1) and 206(2) of the Advisers Act**

Arbor Securities violated Sections 206(1) and 206(2) of the Advisers Act. Section 206(1) prohibits an investment adviser from employing any device, scheme or artifice to defraud any client or prospective client. Section 206(2) prohibits an investment adviser from engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

As a threshold matter, Arbor Securities qualifies as an investment adviser. Section 202(a)(11) of the Advisers Act defines an "investment adviser" to include "any person who, for compensation, engages in the business of advising others" about investing in securities. Arbor Securities falls within this definition because, through T. Gene Gilman, the company made all decisions about how to invest in securities for the benefit of its customers, whose funds were pooled in various brokerage and bank accounts. See In re Bernard J. Krispinsky, Advisers Act Release No. 1832A, 1999 WL 824345 (October 15, 1999)(director of investment clubs, who made all investment decisions and traded on behalf of clubs, was investment adviser).

Section 202(a)(11)(C) of the Advisers Act excludes from the definition of an investment adviser "any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and who receives no special

compensation therefor."    However, the broker-dealer exclusion does not apply to Arbor

Securities because its advisory activities with respect to the pooled vehicle were not

solely incidental to its broker-dealer activities.

Insofar as Arbor Securities acted as an investment adviser, the same facts that

establish the firm's violations of Section 17(a) of the Securities Act and Section 10(b) of

the Exchange Act (see supra Part IV.A) also establish its violations of Sections 206(1)

and 206(2) of the Advisers Act.  See SEC v. Berger, 244 F. Supp. 2d 180, 192 (S.D.N.Y.

2001), aff'd, 322 F.3d 187 (2d Cir. 2003).  Effectively, Arbor Securities, through Steven

A. Gilman, generated false account statements that concealed the true use of customer

funds.  On behalf of Arbor Securities, Steven A. Gilman signed wire transfer request

forms as the customer representative for Arbor Securities' accounts at various bank and

brokerage firms, including Financial Links.

**C.     Arbor Securities Violated Section 15(a) of the Exchange Act**

Section 15(a) of the Exchange Act prohibits any broker or dealer from using

interstate commerce to effect a transaction in securities or to induce or attempt to induce

others to purchase or sell securities unless the broker is registered with the Commission.

Scienter is not an element of a violation of Section 15(a).  See SEC v. Randy, 38 F. Supp.

2d 657, 667 (N.D. Ill. 1999).  Section 3(a)(4) of the Exchange Act defines the term

"broker" as "any person engaged in the business of effecting transactions in securities for

the account of another."  There is no doubt that Arbor Securities qualifies as a broker

because its agents and representatives − T. Gene Gilman and/or Steven A. Gilman − used

customer funds to purchase securities, advertised and promoted Arbor Securities as a

brokerage firm, and generated false account statements that purportedly identified

specific stocks held in individual customer accounts.  See, e.g.,  SEC v. Martino, 255 F. Supp. 2d 268, 283-84 (S.D.N.Y. 2003) (defendant who repeatedly advertised and sold securities qualified as a broker); Randy, 38 F. Supp. 2d at 668 (same).   Because Arbor Securities failed to register as a broker with the Commission, it violated Section 15(a).

Rule 15a-6(a)(4)(i) exempts from registration under Section 15(a) a foreign broker or dealer that "[e]ffects transactions in securities with or for, or induces or attempts to induce the purchase or sale of any security by… [a] registered broker or dealer[.]"  However, this exemption does not apply to a foreign broker-dealer that engages in direct contact with United States customers or acts as a broker-dealer in the United States through an affiliated registered broker-dealer.  See SEC Release No. 34-27017 (July 11, 1989), 1989 WL 1097092 at *24, note 202.  Because Arbor Securities engaged in direct contact with U.S. customers and operated as a broker through Financial Links, Rule 15a-6(a)(4)(i) does not exempt it from registration under Section 15(a) of the Exchange Act.

### D.    Financial Links Violated Section 15(c)(1) of the Exchange Act

Section 15(c)(1) of the Exchange Act prohibits brokers or dealers from effecting transactions in securities by means of any manipulative, deceptive, or other fraudulent device or contrivance.[1]  The same facts that establish Financial Links' violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act (see supra Part IV.A) also establish its violation of Section 15(c)(1).  See Bosio v. Norbay Securities, Inc., 599 F. Supp. 1563, 1567 (E.D.N.Y. 1985) (Sections 10(b) and 15(c)(1) of the

---

[1]       Section 15(c)(1) applies to broker-dealers involved in over-the-counter transactions and transactions on exchanges where broker-dealers are not members.  Financial Links fraudulently

Exchange Act have "same essential requirements"). Specifically, Financial Links facilitated the undisclosed transfer of investor funds through the actions of T. Gene Gilman, who signed wire transfer requests from Arbor Securities accounts.

> **E.     T. Gene Gilman and Steven A. Gilman aided and abetted Arbor Securities' Violations of Section 15(a) of the Exchange Act and Sections 206(1) and 206(2) of the Advisers Act and Financial Links' Violations of Section 15(c)(1) of the Exchange Act**

The elements of aiding and abetting liability are: (1) another party has committed a securities law violation, (2) the accused aider and abetter had a general awareness that his role was part of an overall activity that was improper, and (3) the accused aider and abetter knowingly and substantially assisted the principal violation. See Investors Research Corp. v. SEC, 628 F. 2d 168, 178 (D.C. Cir.), cert. den. 101 S.Ct. 317 (1980). Each of these elements is satisfied with respect to the conduct of T. Gene Gilman and Steven A. Gilman. First, as discussed above, Arbor Securities and Financial Links each committed securities law violations. Second, based on their personal participation in the scheme to misappropriate customer funds, T. Gene Gilman and Steven A. Gilman had direct knowledge of Arbor Securities' and Financial Links' wrongdoing.[2] Finally, T. Gene Gilman and Steven A. Gilman each knowingly and substantially participated in Arbor Securities' and Financial Links' violations. T. Gene Gilman misrepresented to

---

effected over-the-counter transactions on the Nasdaq Stock Market, as well as transactions on the New York Stock Exchange, of which Financial Links was not a member.

[2]     T. Gene Gilman's and Steven A. Gilman's direct knowledge of Arbor Securities' and Financial Links' wrongdoing clearly meets the standard for awareness articulated in Howard v. SEC, 376 F.3d 1176, 1143 (D.C. Cir. 2004)(aider and abettor must have, at a minimum, failed to act with extreme recklessness, which requires a showing that (1) either he was actually aware of red flags or suspicious events that should have alerted him to the underlying violation or (2) the danger of the violation was objectively so obvious that, whether there were red flags or not, he must have been aware of it).

customers that Arbor Securities would establish individual brokerage accounts on their behalf and use their funds solely to trade the stocks of publicly traded U.S. companies. For his part, Steven A. Gilman generated, and sent to customers, false account statements that purportedly identified specific stocks held in their individual brokerage accounts, as well as cash balances and periodic transactions in those accounts. However, instead of using customer funds as represented, T. Gene Gilman and Steven A. Gilman transferred those funds to themselves and T. Gene Gilman's various companies. For most accounts, Steven A. Gilman wrote the checks and/or signed wire transfer request forms. With respect to Arbor Securities' accounts at Financial Links, T. Gene and Steve A. Gilman both signed wire transfer request forms for each wire transfer from Arbor Securities' accounts. Steven A. Gilman signed as the customer representative for Arbor Securities; T. Gene Gilman signed on behalf of Financial Links.

### F. Basis for Asserting Jurisdiction Over Arbor Securities

Defendant Arbor Securities is a foreign entity. Arbor Securities' conduct allows for the exercise of subject matter and personal jurisdiction over the company. This Court finds subject matter jurisdiction over Arbor Securities because much of the company's fraudulent conduct occurred in the United States. Moreover, Arbor Securities' activities outside of the United States had a foreseeable and substantial effect on its American customers. See Robinson v. TCI/US West Communications, Inc., 117 F.3d 900, 905 (5th Cir. 1997). Arbor Securities had an office in the U. S., met with and solicited customers in the U. S., and diverted customer funds from brokerage accounts at Financial Links, a domestic broker-dealer. Moreover, the undisclosed transfer of customer funds from

various foreign bank and brokerage accounts to Gilman-controlled companies clearly had

a substantial adverse effect on those customers.

The basis for asserting personal jurisdiction over Arbor Securities is a different

question.  The federal securities laws authorize the exercise of personal jurisdiction over

foreign entities to the extent permitted by the due process clause of the Fifth Amendment.

SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997).  The exercise of personal

jurisdiction comports with due process when (1) the defendant has purposefully

established "minimum contacts" with the forum, and (2) the exercise of jurisdiction will

not offend traditional notions of fair play and substantial justice.  See, e.g., Burger King

Corp. v. Rudzewicz, 471 U.S. 462, 471-78 (1985).

Here, Arbor Securities' activities establish the requisite minimum contacts for the

exercise of personal jurisdiction.   Arbor Securities' principal place of business was in the

U. S.  Arbor Securities had direct contact with its customers, all of whom were residents

of the U. S., Arbor Securities also deposited customer funds into domestic bank and

brokerage accounts.  Furthermore, the exercise of jurisdiction comports with traditional

notions of fair play and substantial justice.  See Carrillo, 115 F.3d at 1547.  To make this

determination, courts examine the burden on the defendant, the interests of the forum,

and the plaintiff's interest in obtaining relief.  Id.  As discussed, all of Arbor Securities'

customers also reside here. Any burden on Arbor Securities is not great considering that

it has purposefully engaged in activities directed towards U.S. residents and is, in any

event, outweighed by these compelling interests.

IV.    **Relief Requested**

A.    **Permanent Injunctions**

The Commission seeks injunctive relief under Section 20(b) of the Securities Act,

Section 21(d) of the Exchange Act, and Section 209(d) of the Advisers Act.  In this case,

permanent injunctive relief is appropriate against T. Gene Gilman, Steven A. Gilman,

Arbor Securities, and Financial Links because they defrauded customers out of millions

of dollars, their violative conduct was repeated and egregious, and involved knowing or

reckless violations of the federal securities laws.

B.    **Disgorgement and Prejudgment Interest From Four Defendants**

Once the Commission has properly invoked the court's equity jurisdiction by

seeking injunctive relief, the court has the power to order all equitable relief necessary

under the circumstances.  SEC v. Materia, 745 F.2d 197, 200 (2d Cir. 1984), cert. denied,

471 U.S. 1053 (1985).  Disgorgement is clearly warranted against the four defendants.

Records from Arbor Securities' brokerage and bank accounts show that T. Gene Gilman

and Steven A. Gilman diverted customer funds to or for the benefit of themselves and T.

Gene Gilman's companies.  Some of these funds were transferred to bank accounts in the

name of, or for the benefit of, Arbor Securities.  Financial Links received ill-gotten gains

in the form of commissions and fees associated with Arbor Securities' brokerage

accounts.

C.  **Disgorgement And Prejudgment Interest From Relief Defendants**
**TradeTek and Commonwealth**

The court may order disgorgement from a "relief defendant" that is not accused of

wrongdoing in a securities enforcement action where such defendant (1) has received ill-

gotten funds, and (2) does not have a legitimate claim to those funds.  See SEC v.

Colello, 139 F.3d 674, 677 (9th Cir. 1998). TradeTek[3] and Commonwealth received customer funds from Arbor Securities' accounts without any legitimate claim to those funds. TradeTek and Commonwealth did not invest in Arbor Securities. The customers whose funds were commingled in Arbor Securities' accounts at Financial Links were unaware that their funds were being diverted to TradeTek and Commonwealth. Furthermore, there is no evidence that these companies provided anything of value for the funds received.

**D.    Civil Penalties For The Gilmans, Arbor Securities and Financial Links**

Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act authorize the Commission to seek court orders imposing civil penalties against any person who has violated those acts. Given the egregious conduct of T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links, the SEC seeks civil penalties against them pursuant to Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act and Section 209(e) of the Advisers Act. First tier penalties for any violation (arising from conduct that as here, occurred after February 1, 2001) may be imposed up to the larger of $6,500 for a natural person or $60,000 for any other person, or the amount of ill-gotten gain. When the violation involves fraud, second tier penalties may be imposed up to $60,000 for a natural person or $300,000 for any other person, or the amount of the ill-gotten gain. A third tier civil penalty of up to the larger

---

[3]    Relief Defendant TradeTek has been placed in an involuntary bankruptcy proceeding in this district, in Case No. 04-13056-CJK, filed in 2004. Any collection of a judgment obtained in this Court against TradeTek will be in accordance with the Bankruptcy Code and rules, for so long as that case exists. The SEC is a regulatory agency charged with enforcing the federal securities laws, and is proceeding against TradeTek pursuant to the police and regulatory exception to the automatic stay set forth in §362(b)(4) of the Bankruptcy Code.

of $120,000 for a natural person or $600,000 for any other person, or the amount of ill-gotten gain may be imposed when any provision of the Securities Act or the Exchange Act is violated, if the violation involved fraud or deceit and the violation resulted in substantial losses or created a significant risk of substantial losses to other persons.[4]

The Commission requests that the Court order the four defendants to pay a substantial statutory civil penalty in an amount determined by the Court to be appropriate. The defendants' violations clearly involved fraud and deceit and resulted in substantial losses to investors. This Court should impose statutory civil penalties against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links based upon the repeated nature of their violations, and their integral activities in the transfers of funds and the use of investor funds contrary to representations to the investors. Specifically, T. Gene Gilman misrepresented to customers that Arbor Securities would establish individual brokerage accounts on their behalf and use their funds solely to trade the stocks of publicly traded U.S. companies. For his part, on behalf of Arbor Securities and at the request of his father, Steven A. Gilman generated, and sent to customers, false account statements that purportedly identified specific stocks held in their individual brokerage accounts, as well as cash balances and periodic transactions in those accounts. However, instead of using customer funds as represented, Steven A. Gilman transferred those funds to himself, his father T. Gene Gilman, and the father's various companies.

---

[4]      Civil monetary penalties pursuant to the Securities Act and the Exchange Act are required to be adjusted for inflation. The four defendants' conduct herein occurred from 1998 through 2003, after the time that the adjustment became effective in early 2001. 17 C.F.R. 201.1001, Adjustment of civil monetary penalties - 1996. LEXSEE 66 FR 8761 at 8762. The amounts of civil monetary penalties applicable herein are, therefore, the amounts adjusted for inflation for the relevant time of the violations.

Substantial civil penalties are appropriate against the four defendants.  A proposed Final

Judgment has been submitted herewith for the Court's consideration.

**V.**    <u>**CONCLUSION**</u>

For the reasons stated above, the SEC's motion for entry of default judgment against

defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links, and

against relief defendants TradeTek and Commonwealth should be granted in all respects.

Dated:  March 17, 2006

Respectfully submitted,

<u>/s/ Edward G. Sullivan</u>
Edward G. Sullivan
Senior Trial Counsel

COUNSEL FOR PLAINTIFF
Securities and Exchange Commission
3475 Lenox Road, N.E., Suite 1000
Atlanta, Georgia 30326-1232
(404) 842-7612

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of <u>SEC'S MOTION FOR DEFAULT JUDGMENT, AND TO SET DISGORGMENT, PREJDUGMENT INTEREST AND CIVIL PENALTIES AGAINST ALL DEFENDANTS, AND TO SET DISGORGEMENT AND PREJUDGMENT INTEREST AGAINST THE RELIEF DEFENDANTS,</u> and memorandum in support thereof, upon the defendants by causing the same to be deposited in the United States Mail with sufficient postage affixed thereto addressed as follows:

T. Gene Gilman
Arbor Securities, Ltd.
Financial Links, Inc.
TradeTek, Ltd.
Commonwealth Financial Holdings, Inc.
133 Kennedy Memorial Drive
Waterville, Maine  04901

T. Gene Gilman
Arbor Securities, Ltd.
Financial Links, Inc.
TradeTek, Ltd.
Commonwealth Financial Holdings, Inc.
11 Morse Road
Newton, Massachusetts 02460

Steven A. Gilman
67 Ford Street
San Francisco, California  94114

This 17th day of March, 2006.

<u>/s/ Edward G. Sullivan</u>
Edward G. Sullivan

Counsel for Plaintiff
Securities and Exchange Commission
3475 Lenox Road, N.E., Suite 1000
Atlanta, Georgia  30326
(404) 842-7612
sullivane@sec.gov

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| T. GENE GILMAN, STEVEN A. GILMAN, | : |
| ARBOR SECURITIES, LTD., and | : |
| FINANCIAL LINKS, INC., | : |
| | : |
| Defendants, | : |
| | : |
| and | : |
| | : |
| TRADETEK, LTD. and | : |
| COMMONWEALTH FINANCIAL HOLDINGS, INC. | : |
| | : |
| Relief Defendants. | : |

CIVIL ACTION
NO. 05-10512-REK

---

## DECLARATION OF WILLIAM A. REES IN SUPPORT OF SEC'S MOTION FOR DEFAULT JUDGMENT, AND TO SET DISGORGEMENT, PREJUDGMENT INTEREST AND CIVIL PENALTIES AGAINST ALL DEFENDANTS AND TO SET DISGORGEMENT AND PREJUDGMENT INTEREST AGAINST THE RELIEF DEFENDANTS

I, William A. Rees, declare pursuant to the provisions of 28 U.S.C. § 1746:

1.      I am employed by the Atlanta District Office of the Securities and Exchange Commission ("Commission" or "SEC") as Branch Chief. In that capacity, I supervised the Commission's investigation of this matter involving the securities fraud of T. Gene Gilman, Steven A. Gilman, Arbor Securities, Ltd. ("Arbor Securities") and Financial Links, Inc. ("Financial Links"). I have direct knowledge of the matters set forth herein, from the results of that investigation.

2.      My work address is 3475 Lenox Road, N.E. Suite 1000, Atlanta, Georgia 30326.  The telephone number for my office is (404) 842-7609.

3.      In conjunction with the preparation of this declaration, I reviewed, among other things:

(A) account statements and wire transfer requests and confirmations from Penson Financial Services, Inc., the clearing broker for Financial Links;

(B) documents produced by T. Gene Gilman to the U.S. Attorney's Office for the District of Massachusetts, including:

(i) a detailed memorandum dated January 5, 2004, and entitled "Fraudulent Use of Funds by T. Gene Gilman," which was prepared by T. Gene Gilman at the request of the U.S. Attorney's Office, and which summarizes the use of investor funds;

(ii) account statements for various foreign and domestic bank and brokerage accounts held in the names, or for the benefit of, Gene Gilman, Steven Gilman, and companies that T. Gene Gilman owned and controlled, including Arbor Securities, Ltd., TradeTek, Ltd. ("TradeTek"), Financial Links, and Commonwealth Financial Holdings, Inc. ("Commonwealth");

(iii) investor lists;

(iv) financial statements and accounting documentation for various companies owned and controlled by T. Gene Gilman, including Arbor Securities, TradeTek, Financial Links, and Commonwealth; and

(v) written correspondence with investors and financial institutions;

(C) the sworn investigative testimony of four former employees of Financial Links and TradeTek;

(D) documents produced by RBC Dominion Securities, Inc., an "investment dealer" registered with the Ontario Securities Commission, including account statements for an account in the name of Arbor Securities; and

(E) documents voluntarily produced to the Commission by investors in Arbor Securities, including purported account statements generated and sent to them by Steven A. Gilman;

4.  From my review of the documents described above, I have concluded that T. Gene Gilman and Steven A. Gilman solicited and collected approximately $20 million from investors, in their scheme to defraud.

5.  As described by the investors, and as summarized by T. Gene Gilman in his January 5, 2004 memorandum entitled "Fraudulent Use of Funds by T. Gene Gilman," and supported by the documents described above in the preceding paragraph, T. Gene Gilman and Steven A. Gilman commingled and transferred investor funds into several foreign and domestic bank and brokerage accounts in the name of, or for the benefit of, Arbor Securities.

6.  From the foreign and domestic bank and brokerage accounts in the name of or for the benefit of Arbor Securities, T. Gene Gilman and Steven A. Gilman transferred or caused to be transferred approximately $9 million to relief defendant TradeTek, and transferred or caused to be transferred approximately $200,000 to relief defendant Commonwealth.  Since I know from the investigation that T. Gene Gilman and Steven A. Gilman jointly exercised control over these accounts and over TradeTek, disgorgement

for TradeTek should be $9 million, which it owes jointly and severally with T. Gene Gilman and with Steven A. Gilman. Similarly, disgorgement against Commonwealth should be $200,000, which it owes jointly and severally with T. Gene Gilman and Steven A. Gilman.

7. As a practical matter, the SEC seeks disgorgement of only a portion of the total funds raised and controlled by T. Gene Gilman, and later controlled and distributed by T. Gene Gilman and Steven A.Gilman. For example, the documents obtained by the SEC staff indicate that T. Gene Gilman and Steven A. Gilman obtained approximately $20 million from investors, which they then transferred to accounts in the name of, or for the benefit of, defendant Arbor Securities. From that amount, the Gilmans returned approximately $6 million to the investors, as purported returns on their investments. While the returns were not returns on investment as represented, the SEC has no reason to believe that the funds were not in fact returned to the investors. As a result of this calculation, the total amount of disgorgement against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links should be $14 million, which is owed jointly and severally by the four defendants in this case.

8. In calculating disgorgement in this matter, the SEC staff considered whether the amount raised should be further reduced by other factors. For example, T. Gene Gilman has alleged that investor funds were dissipated through trading losses in various brokerage accounts he controlled, and/or that he lost investor money in connection with the liquidation of two foreign banks, and/or that he used investor funds to pay administrative costs of companies under his control. Since T. Gene Gilman and Steven A. Gilman raised the funds from the investors under fraudulent pretenses—and thereafter

dissipated the investors' funds through trading losses and administrative costs—the defendants should not, in equity, have disgorgement further reduced by those claimed losses and expenses. Once they fraudulently took the investors' monies, the Gilmans did so at their peril, and disgorgement should not be reduced to account for their subsequent losses of, or expenses from, the investor funds.

9. I have caused prejudgment interest to be calculated on the amount of $14,000,000 from November 1, 2003, through February 28, 2006, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 4% annually to a high of 7% annually). During that period, the total prejudgment interest on $14,000,000 totals $1,681,718.26, for a combined total of $15,681,718.26. This is the amount of prejudgment interest that should be ordered, jointly and severally, against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links. Attached hereto as Exhibit A, and incorporated herein by reference, is the prejudgment interest calculation for the disgorgement against the four defendants.

10. I have caused prejudgment interest to be calculated on the amount of $9,000,000 from November 1, 2003, through February 28, 2006, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 4% annually to a high of 7% annually). During that period, the total prejudgment interest on $9,000,000 totals $1,081,104.57, for a combined total of $10,081,104.57. This is the amount of prejudgment interest that should be ordered against relief defendant TradeTek, which it owes jointly and severally with T. Gene Gilman, Steven A. Gilman, Arbor Securities

and Financial Links. Attached hereto as Exhibit B, and incorporated herein by reference, is the prejudgment interest calculation for the disgorgement against TradeTek, which it owes jointly and severally with T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links.

11. I have caused prejudgment interest to be calculated on the amount of $200,000 from November 1, 2003, through February 28, 2006, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 4% annually to a high of 7% annually). During that period, the total prejudgment interest on $200,000 totals $24,024.57, for a combined total of $224,024.57. This is the amount of prejudgment interest that should be ordered against relief defendant Commonwealth, which it owes jointly and severally with T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links. Attached hereto as Exhibit C, and incorporated herein by reference, is the prejudgment interest calculation for the disgorgement against TradeTek, which it owes jointly and severally with T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links.

12. From the Commission's investigation in this matter, none of the defendants or the relief defendants is an infant or an incompetent. Similarly, no defendant or relief defendant in this case is a member of the military service of the United States.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this _1st_ day of March, 2006.

_William A. Rees_
William A. Rees

6



# U.S. Securities and Exchange Commission

## Division of Enforcement

## Prejudgment Interest Report

### GENE GILMAN/STEVE GILMAN/ARBOR SECURITIES/FINANCIAL LINKS

| Quarter Range | Annual Rate | Period Rate | Quarter Interest | Principal+Interest |
|---|---|---|---|---|
| Violation Amount | | | | $14,000,000.00 |
| 12/01/2003-12/31/2003 | 4% | 0.33% | $46,666.67 | $14,046,666.67 |
| 01/01/2004-03/31/2004 | 4% | 1% | $140,466.67 | $14,187,133.34 |
| 04/01/2004-06/30/2004 | 5% | 1.25% | $177,339.17 | $14,364,472.51 |
| 07/01/2004-09/30/2004 | 4% | 1% | $143,644.73 | $14,508,117.24 |
| 10/01/2004-12/31/2004 | 5% | 1.25% | $181,351.47 | $14,689,468.71 |
| 01/01/2005-03/31/2005 | 5% | 1.25% | $183,618.36 | $14,873,087.07 |
| 04/01/2005-06/30/2005 | 6% | 1.5% | $223,096.31 | $15,096,183.38 |
| 07/01/2005-09/30/2005 | 6% | 1.5% | $226,442.75 | $15,322,626.13 |
| 10/01/2005-12/31/2005 | 7% | 1.75% | $268,145.96 | $15,590,772.09 |
| 01/01/2006-01/31/2006 | 7% | 0.58% | $90,946.17 | $15,681,718.26 |

| Prejudgment Violation Range | Quarter Interest Total | Prejudgment Total |
|---|---|---|
| 12/01/2003-01/31/2006 | $1,681,718.26 | $15,681,718.26 |

EXHIBIT

A

PENGAD-Bayonne, N. J.



# U.S. Securities and Exchange Commission

# Division of Enforcement

# Prejudgment Interest Report

## TradeTek/Joint and Several with Gilmans/Arbor and Fin. Links

| Quarter Range | Annual Rate | Period Rate | Quarter Interest | Principal+Interest |
|---|---|---|---|---|
| Violation Amount | | | | $9,000,000.00 |
| 12/01/2003-12/31/2003 | 4% | 0.33% | $30,000.00 | $9,030,000.00 |
| 01/01/2004-03/31/2004 | 4% | 1% | $90,300.00 | $9,120,300.00 |
| 04/01/2004-06/30/2004 | 5% | 1.25% | $114,003.75 | $9,234,303.75 |
| 07/01/2004-09/30/2004 | 4% | 1% | $92,343.04 | $9,326,646.79 |
| 10/01/2004-12/31/2004 | 5% | 1.25% | $116,583.08 | $9,443,229.87 |
| 01/01/2005-03/31/2005 | 5% | 1.25% | $118,040.37 | $9,561,270.24 |
| 04/01/2005-06/30/2005 | 6% | 1.5% | $143,419.05 | $9,704,689.29 |
| 07/01/2005-09/30/2005 | 6% | 1.5% | $145,570.34 | $9,850,259.63 |
| 10/01/2005-12/31/2005 | 7% | 1.75% | $172,379.54 | $10,022,639.17 |
| 01/01/2006-01/31/2006 | 7% | 0.58% | $58,465.40 | $10,081,104.57 |

| Prejudgment Violation Range | Quarter Interest Total | Prejudgment Total |
|---|---|---|
| 12/01/2003-01/31/2006 | $1,081,104.57 | $10,081,104.57 |



EXHIBIT

B



# U.S. Securities and Exchange Commission

## Division of Enforcement

## Prejudgment Interest Report

### Commonwealth/Joint and Several with Gilmans/Arbor and Fin. Links

| Quarter Range | Annual Rate | Period Rate | Quarter Interest | Principal+Interest |
|---|---|---|---|---|
| Violation Amount | | | | $200,000.00 |
| 12/01/2003-12/31/2003 | 4% | 0.33% | $666.67 | $200,666.67 |
| 01/01/2004-03/31/2004 | 4% | 1% | $2,006.67 | $202,673.34 |
| 04/01/2004-06/30/2004 | 5% | 1.25% | $2,533.42 | $205,206.76 |
| 07/01/2004-09/30/2004 | 4% | 1% | $2,052.07 | $207,258.83 |
| 10/01/2004-12/31/2004 | 5% | 1.25% | $2,590.74 | $209,849.57 |
| 01/01/2005-03/31/2005 | 5% | 1.25% | $2,623.12 | $212,472.69 |
| 04/01/2005-06/30/2005 | 6% | 1.5% | $3,187.09 | $215,659.78 |
| 07/01/2005-09/30/2005 | 6% | 1.5% | $3,234.90 | $218,894.68 |
| 10/01/2005-12/31/2005 | 7% | 1.75% | $3,830.66 | $222,725.34 |
| 01/01/2006-01/31/2006 | 7% | 0.58% | $1,299.23 | $224,024.57 |

| Prejudgment Violation Range | Quarter Interest Total | Prejudgment Total |
|---|---|---|
| 12/01/2003-01/31/2006 | $24,024.57 | $224,024.57 |



EXHIBIT
C

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **NO. 05-10512-REK** |
| **v.** | : | |
| | : | |
| **T. GENE GILMAN, STEVEN A. GILMAN,** | : | |
| **ARBOR SECURITIES, LTD., and** | : | |
| **FINANCIAL LINKS, INC.,** | : | |
| | : | |
| **Defendants,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **TRADETEK, LTD. and** | : | |
| **COMMONWEALTH FINANCIAL HOLDINGS, INC.** | : | |
| | : | |
| **Relief Defendants.** | : | |

_____ :

### DEFAULT JUDGMENT AS TO DEFENDANTS T. GENE GILMAN, STEVEN A. GILMAN, ARBOR SECURITIES AND FINANCIAL LINKS, AND AS TO RELIEF DEFENDANTS TRADETEK AND COMMONWEALTH

The Securities and Exchange Commission filed its Complaint against Defendants

T. Gene Gilman, Steven A. Gilman, Arbor Securities, Ltd. ("Arbor Securities") and

Financial Links, Inc. ("Financial Links") and against Relief Defendants TradeTek, Ltd.

("TradeTek") and Commonwealth Financial Holdings, Inc. ("Commonwealth") on March

17, 2005. The SEC served the defendant Steven A. Gilman with the summons and

complaint on March 22, 2005. His answer or responsive pleading was due April 11,

2005. The SEC served the three remaining defendants and two relief defendants with the

summonses and complaint on May 25, 2005 and answers were due from them not later

than June 14, 2005. None of the defendants filed an answer or responsive pleading, and

the SEC moved for entries of default on June 17, 2005.  The Clerk granted the entries of default on March 2, 2006.  The SEC has now moved the Court for a default judgment by default against T. Gene Gilman, Steven A. Gilman, Arbor Securities, Financial Links, TradeTek and Commonwealth.  The Court hereby grants the SEC's motion and has set forth relevant findings of fact and conclusions of law below, in addition to injunctive relief, and the imposition of disgorgement, prejudgment interest and civil penalties, where appropriate.

<u>**FINDINGS AND CONCLUSIONS**</u>

Entries of default against T. Gene Gilman, Steven A. Gilman, Arbor Securities, Financial Links, TradeTek and Commonwealth were properly entered by the Clerk on March 2, 2006.  The Declaration of William A. Rees, provided by the Commission establishes that from the Commission's investigation, none of the defendants or relief defendants is an infant or an incompetent.  Similarly, no defendant or relief defendant in this case is a member of the military service of the United States.  (Rees Declaration, ¶12).  Given the failure of the six defendants to answer or otherwise defend the allegations against them, the following allegations of the SEC's Complaint are now deemed to be true, and are made the findings of this Court:

1)    <u>**Findings of Fact**</u>

Between December 1998 and October 2003, T. Gene Gilman and his son Steven A. Gilman solicited approximately $20 million and misappropriated at least $14 million from approximately 40 people who invested funds with Arbor Securities, an unregistered broker-dealer which was established by and controlled by T. Gene Gilman.  (Complaint, ¶ 2).

T. Gene Gilman operated Arbor Securities from an office in Needham, Massachusetts, and promoted the company as an offshore brokerage firm. He told prospective customers that he would establish individual brokerage accounts for them at Arbor Securities and would use their funds to trade the stocks of publicly traded U.S. companies. (Complaint, ¶ 3).

Instead of establishing individual accounts and investing clients' funds in public companies as represented, Steven A. Gilman, on behalf of Arbor Securities and with the knowledge of T. Gene Gilman, commingled and transferred customer funds into several foreign and domestic bank and brokerage accounts in the name of Arbor Securities, including accounts at defendant Financial Links. Financial Links was a registered broker-dealer that was indirectly owned and controlled by T. Gene Gilman through his holding company, Commonwealth. From these accounts, Steven A. Gilman transferred customer funds to himself, to T. Gene Gilman, and to private start-up companies that T. Gene Gilman owned and controlled, including TradeTek, a software development company. (Complaint, ¶ 4).

In order to conceal these transfers, Steven A. Gilman, on behalf of Arbor Securities and at the request of T. Gene Gilman, generated and sent to customers, fictitious account statements that purported to identify specific stocks held in their supposedly individual brokerage accounts at Arbor Securities. The false account statements also misrepresented cash balances, and falsely stated that transactions in the accounts took place, when in reality they did not. (Complaint, ¶ 5).

The false account statements contained material omissions in that they failed to indicate that customer funds had been transferred to T. Gene Gilman, to Steven A.

Gilman, or to any of T. Gene Gilman's companies. Further, the false account statements failed to accurately identify the stocks that were actually held and traded in Arbor Securities' various brokerage accounts, nor did they reveal the cash balances in those accounts or in Arbor Securities' various bank accounts. (Complaint, ¶ 6).

T. Gene Gilman, Steven A. Gilman, Arbor Securities, and Financial Links have, directly or indirectly, engaged in acts, practices, and courses of business which constituted and will constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder [15. U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]. (Complaint, ¶ 7).

Arbor Securities has, directly or indirectly, engaged in acts, practices, and courses of business which have violated, and T. Gene Gilman and Steven A. Gilman have aided and abetted its violations of, Section 15(a) of the Exchange Act [15 U.S.C. §78o(a)] and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6 (1) and (2)]. (Complaint, ¶ 8).

Financial Links has, directly or indirectly, engaged in acts, practices, and courses of business which have violated, and T. Gene Gilman and Steven A. Gilman have aided and abetted violations its of, Section 15(c) of the Exchange Act [15 U.S.C. §78o(c)]. (Complaint, ¶ 9).

Relief Defendant TradeTek has, by virtue of its conduct, directly or indirectly obtained funds to which it has no legitimate claim, and has been unjustly enriched thereby. (Complaint, ¶ 10).

Relief Defendant Commonwealth has, by virtue of its conduct, directly or indirectly obtained funds to which it has no legitimate claim, and has been unjustly enriched thereby. (Complaint, ¶ 11).

The Defendants, unless enjoined by this Court, will continue to engage in the acts, practices, and courses of business alleged herein, and in acts, practices and courses of business of similar purport and object. (Complaint, ¶ 12).

T. Gene Gilman, 62, resides in Newton, Massachusetts.  He is the majority owner, CEO, Treasurer, and Chairman of the Board of Directors of relief defendant Commonwealth.  As a registered representative and general securities principal with Financial Links, he holds Series 7 and 24 securities licenses and has over 15 years experience in the financial services industry.  G. Gilman has worked at several small brokerage firms in the past.  (Complaint, ¶ 17).

Steven A. Gilman, 37, is the son of G. Gilman, and resides in San Francisco, California.  He was, at all relevant times, the Manager, Secretary, and President of Arbor Securities, and the Secretary for Commonwealth.  S. Gilman holds a Series 7 securities license. (Complaint, ¶ 18).

Arbor Securities was incorporated in the Bahamas in November 1998.  It is neither registered with the Commission as a broker-dealer or investment adviser, nor is it registered with the Securities Commission of the Bahamas in any capacity.  Its registered agent is a law firm located in Nassau.  Arbor Securities is controlled by T. Gene Gilman and Steven A. Gilman. (Complaint, ¶ 19).

Financial Links, is a North Carolina corporation, which is registered with the Commission as a broker-dealer. It is owned by Commonwealth, and has a branch office in Needham, Massachusetts. (Complaint, ¶ 20).

Commonwealth, is a Delaware corporation headquartered in Needham, Massachusetts. For all relevant periods, it shared office space with Financial Links. Commonwealth has no employees, and serves merely as a holding company for TradeTek and Financial Links. G. Gilman owns and controls Commonwealth, and also serves as its CEO and Treasurer. (Complaint, ¶ 21).

TradeTek, is a Delaware corporation that purportedly develops direct execution electronic trading software. TradeTek is headquartered in Needham, Massachusetts, with offices adjacent to those shared by Financial Links and Commonwealth. On April 13, 2004, one of TradeTek's creditors filed an involuntary Chapter 7 petition in this district. On May 10, 2004, the bankruptcy court entered an order for relief commencing bankruptcy proceedings. (Complaint, ¶ 22).

## 2) <u>Jurisdiction and Venue</u>

The Commission filed this action pursuant to authority conferred upon it by Sections 20(b), (c) and (d) of the Securities Act [15 U.S.C. §§ 77t(b)-(d)], Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d)-(e)] and Sections 209(d) and 209 (e) of the Advisers Act [15 U.S.C. §§ 80b-9(d)-(e)] to enjoin the defendants from engaging in the transactions, acts, practices and courses of business alleged in this Complaint, and transactions, acts, practices and courses of business of similar purport and object, for disgorgement of illegally obtained funds and other equitable relief, and for civil money penalties.

This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)], Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa], and Section 214 of the Advisers Act [15 U.S.C. §80b-14].

The Defendants and the Relief Defendants, directly and indirectly, have made use of the mails, the means and instrumentalities of transportation and communication in interstate commerce, and the means and instrumentalities of interstate commerce, in connection with the transactions, acts, practices, and courses of business alleged in the Complaint.

Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9], because certain of the transactions, acts, practices and courses of business constituting violations of the Securities Act, Exchange Act and Advisers Act occurred within the District of Massachusetts.

### 3) **Disgorgement, Prejudgment Interest And Civil Penalties**

In support of its motion for default judgment, the SEC has provided the Court with the sworn Declaration of William A. Rees, pursuant to 28 U.S.C. §1746.  Rees is the SEC Branch Chief who supervised the SEC's investigation in this matter.  In his declaration, Rees stated that he reviewed: A) account statements and wire transfer requests and confirmations from Penson Financial Services, Inc., the clearing broker for Financial Links; (B) documents produced by T. Gene Gilman to the U.S. Attorney's Office for the District of Massachusetts, including: (i) a detailed memorandum dated January 5, 2004, and entitled "Fraudulent Use of Funds by T. Gene Gilman," which was

prepared by T. Gene Gilman at the request of the U.S. Attorney's Office, and which

summarizes the use of investor funds; (ii) account statements for various foreign and

domestic bank and brokerage accounts held in the names, or for the benefit of, T. Gene

Gilman, Steven A. Gilman, and companies that T. Gene Gilman owned and controlled,

including Arbor Securities, TradeTek, Financial Links, and Commonwealth;  (iii)

investor lists;  (iv) financial statements and accounting documentation for various

companies owned and controlled by T. Gene Gilman, including Arbor Securities,

TradeTek, Financial Links, and Commonwealth; and (v) written correspondence with

investors and financial institutions; (C) the sworn investigative testimony of four former

employees of Financial Links and TradeTek; (D) documents produced by RBC Dominion

Securities, Inc., an "investment dealer" registered with the Ontario Securities

Commission, including account statements for an account in the name of Arbor

Securities; and (E) documents voluntarily produced to the Commission by investors in

Arbor Securities, including purported account statements generated and sent to them by

Steven A. Gilman. (Rees Declaration ¶ 3).

     Rees's Declaration also establishes that T. Gene Gilman and Steven A. Gilman

solicited and collected approximately $20 million from investors, in their scheme to

defraud, and further sets forth that as described by the investors, and as summarized by T.

Gene Gilman in his January 5, 2004 memorandum entitled "Fraudulent Use of Funds by

T. Gene Gilman," and supported by the documents described above in the preceding

paragraph, T. Gene Gilman and Steven A. Gilman commingled and transferred investor

funds into several foreign and domestic bank and brokerage accounts in the name of, or

for the benefit of, Arbor Securities.  (Rees Declaration ¶ 4-5).

Further, the Rees Declaration establishes that from the foreign and domestic bank and brokerage accounts in the name of or for the benefit of Arbor Securities, T. Gene Gilman and Steven A. Gilman transferred or caused to be transferred approximately $9 million to relief defendant TradeTek, and transferred or caused to be transferred approximately $200,000 to relief defendant Commonwealth. Because T. Gene Gilman and Steven A. Gilman jointly exercised control over these accounts and over TradeTek, disgorgement for TradeTek should be $9 million, which it owes jointly and severally with T. Gene Gilman and with Steven A. Gilman. Similarly, disgorgement against Commonwealth should be $200,000, which it owes jointly and severally with T. Gene Gilman and Steven A. Gilman. (Rees Declaration ¶ 6).

The SEC seeks disgorgement of only a portion of the total funds raised and controlled by T. Gene Gilman, and later controlled and distributed by T. Gene Gilman and Steven A.Gilman. The Rees Declaration establishes that T. Gene Gilman and Steven A. Gilman obtained approximately $20 million from investors, which they then transferred to accounts in the name of, or for the benefit of, defendant Arbor Securities. However, from that amount, the Gilmans returned approximately $6 million to the investors, as purported returns on their investments. While the returns were not returns on investment as represented but rather a return of principal, the funds nonetheless were returned to the investors. As a result of this calculation, the total amount of disgorgement against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links should be $14 million, which is owed jointly and severally by the four defendants in this case. (Rees Declaration ¶ 7).

As set forth in the Rees Declaration, the declarant caused prejudgment interest to be calculated on the amount of $14,000,000 from November 1, 2003, through February 28, 2006, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 4% annually to a high of 7% annually).  During that period, the total prejudgment interest on $14,000,000 totals $1,681,718.26, for a combined total of $15,681,718.26. This is the amount of prejudgment interest that should be ordered, jointly and severally, against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links. (Rees Declaration ¶ 9).

In the Rees Declaration, Mr. Rees also calculated prejudgment interest on the amount of $9,000,000 from November 1, 2003, through February 28, 2006, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 4% annually to a high of 7% annually).  During that period, the total prejudgment interest on $9,000,000 totals $1,081,104.57, for a combined total of $10,081,104.57.  This is the amount of prejudgment interest that should be ordered against relief defendant TradeTek, which it owes jointly and severally with T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links. (Rees Declaration ¶ 10).

The Rees Declaration similarly set forth a calculation of prejudgment interest on the amount of $200,000 from November 1, 2003, through February 28, 2006, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 4% annually to a high of 7% annually).  During that period, the total prejudgment interest on $200,000 totals

$24,024.57, for a combined total of $224,024.57. This is the amount of prejudgment interest that should be ordered against relief defendant Commonwealth, which it owes jointly and severally with T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links. (Rees Declaration ¶ 11).

Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act authorizes the Court to order civil penalties against any person who has violated those acts. Given the egregious conduct of T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links, the SEC seeks civil penalties against them pursuant to Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act and Section 209(e) of the Advisers Act. First tier penalties for any violation (arising from conduct that as here, occurred after February 1, 2001) may be imposed up to the larger of $6,500 for a natural person or $60,000 for any other person, or the amount of ill-gotten gain. When the violation involves fraud, second tier penalties may be imposed up to $60,000 for a natural person or $300,000 for any other person, or the amount of the ill-gotten gain. A third tier civil penalty of up to the larger of $120,000 for a natural person or $600,000 for any other person, or the amount of ill-gotten gain may be imposed when any provision of the Securities Act or the Exchange Act is violated, if the violation involved fraud or deceit and the violation resulted in substantial losses or created a significant risk of substantial losses to other persons.[1]

---

1    Civil monetary penalties pursuant to the Securities Act and the Exchange Act are required to be adjusted for inflation. The four defendants' conduct herein occurred from 1998 through 2003, after the time that the adjustment became effective in early 2001. 17 C.F.R. 201.1001, Adjustment of civil monetary penalties - 1996. LEXSEE 66 FR 8761 at 8762. The amounts of civil monetary penalties applicable herein are, therefore, the amounts adjusted for inflation for the relevant time of the violations.

The Commission requests that the Court order the four defendants to pay a substantial statutory civil penalty in an amount determined by the Court, and points out that the defendants' violations clearly involved fraud and deceit and resulted in substantial losses to investors.  This Court should impose statutory civil penalties against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links based upon the repeated nature of their violations, and their integral activities in the transfers of funds and the use of investor funds contrary to representations to the investors.  Specifically, T. Gene Gilman misrepresented to customers that Arbor Securities would establish individual brokerage accounts on their behalf and use their funds solely to trade the stocks of publicly traded U.S. companies.   For his part, on behalf of Arbor Securities and at the request of his father, Steven A. Gilman generated, and sent to customers, false account statements that purportedly identified specific stocks held in their individual brokerage accounts, as well as cash balances and periodic transactions in those accounts. However, instead of using customer funds as represented, Steven A. Gilman transferred those funds to himself, his father T. Gene Gilman, and the father's various companies. Substantial civil penalties are appropriate against the four defendants.

<u>**INJUNCTIVE AND OTHER RELIEF**</u>

**I.**

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links and their agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Default Judgment, by personal service or otherwise, and each of them, be and hereby are permanently enjoined and

restrained from violating, directly or indirectly, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. 77q(a)], by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, by:

    1.    employing any device, scheme or artifice to defraud;

    2.    obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    3.    engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in the offer or sale of any security.

## II.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Default Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a

material fact    necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or

would  operate as a fraud or deceit upon any person.

### III.

**IT IS FURTHER ORDERED**, **ADJUDGED AND DECREED** that defendant

Arbor Securities, aided and abetted by T. Gene Gilman and Steven A. Gilman, and their

agents, servants, employees, attorneys and those persons in active concert or participation

with them, who receive actual notice of the Default Judgment, by personal service,

facsimile or otherwise, and each of them, by use of the mails or any means or

instrumentality of interstate commerce, are permanently restrained from directly or

indirectly:

(i) from engaging in the business of effecting transactions in securities for the account of

others;   (ii) from being persons other than a natural person or a natural person not

associated with a broker or dealer which is a person other than a natural person (other

than such a broker or dealer whose business is exclusively intrastate and who does not

make use of any facility of any national securities exchange); and, (iii) from making use

of the mails or any means or instrumentality of interstate commerce to effect transactions

in, or to induce or attempt to induce the purchase or sale of, any security (other than an

exempted security or commercial paper, bankers' acceptances, or commercial bills)

without being registered in accordance with Section 15(b) of the Exchange Act [15

U.S.C. § 78o(b)];

in violation of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

## IV.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant Arbor Securities, was at all relevant times an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)], and that that defendant Arbor Securities, aided and abetted by T. Gene Gilman and Steven A. Gilman, and their agents, servants, employees, attorneys and those persons in active concert or participation with them, who receive actual notice of the Default Judgment, by personal service, facsimile or otherwise, and each of them, by use of the mails or any means or instrumentality of interstate commerce, are permanently restrained from directly or indirectly: (a) while acting knowingly or recklessly, employing devices, schemes, or artifices to defraud any client or prospective client; or (b) engaging in transactions, practices, or courses of business which operate as fraud or deceit upon a client or prospective client, in violation of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1),(2)].

## V.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that defendant Financial Links was, at all relevant times, a broker or dealer as those terms are defined by Sections 3(a)(4) and 3(a)(5) of the Exchange Act [15 U.S.C. § 78c(a)(4), (5)], and that defendant Financial Links, aided and abetted by G. Gilman and S. Gilman, and their agents, servants, employees, attorneys and those persons in active concert or participation with them, who receive actual notice of the Default Judgment, by personal service, facsimile or otherwise, and each of them, by use of the mails or any means or

instrumentality of interstate commerce, are permanently restrained from directly or indirectly, while acting knowingly or recklessly, effecting transactions in, or inducing or attempting to induce the purchase or sale of securities (otherwise than on a national securities exchange of which it was a member) by means of a manipulative, deceptive, or other fraudulent device or contrivance in violation of Section 15(c) of the Exchange Act [15 U.S.C. §78o(c)].

## VI.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that disgorgement against defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links is joint and several to the extent that funds were transferred from accounts in those entities' names and controlled by the Gilmans, to other accounts controlled by the Gilmans.  Further, disgorgement against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links is joint and several with TradeTek, to the extent that funds were transferred by the Gilmans to accounts of TradeTek. Also, disgorgement against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links is joint and several with Commonwealth, to the extent that funds were transferred by the Gilmans to accounts of Commonwealth.  Defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links are jointly and severally liable for disgorgement of $14,000,000, representing investor funds gained by them as a result of the conduct alleged in the Complaint less the amount repaid to investors, together with prejudgment interest thereon in the amount of $1,681,718.26, for a combined total of $15,681,718.26.  Of that amount, relief defendant TradeTek is jointly and severally liable with the four defendants for disgorgement in the amount of $9,000,000

representing the investor funds transferred, without consideration, to TradeTek as a result

of the conduct alleged in the Complaint, together with prejudgment interest thereon in the

amount of $1,081,104.57, for a combined total of $10,081,104.57. Of the total amount

of disgorgement, relief defendant Commonwealth is jointly and severally liable with the

four defendants for disgorgement in the amount of $200,000 representing the investor

funds transferred, without consideration, to Commonwealth as a result of the conduct

alleged in the Complaint, together with prejudgment interest thereon in the amount of

$24,024.57, for a combined total of $224,024.57.   Defendants T. Gene Gilman, Steven

A. Gilman, Arbor Securities and Financial Links and Relief Defendant Commonwealth

shall satisfy these joint and several obligations by paying the respective total amounts

within ten (10) ten business after the entry of this Default Judgment to the Clerk of this

Court,[2]  together with a cover letter identifying by name the relevant paying defendant or

relief defendant in this action; setting forth the title and civil action number of this action

and the name of this Court; and specifying that payment is made pursuant to this Default

Judgment.  The paying defendant shall simultaneously transmit photocopies of such

payment and letter to the SEC's counsel in this action, Edward G. Sullivan, Esq. at

Securities and Exchange Commission, 3475 Lenox Road, NE, Suite 1000, Atlanta,

Georgia 30326.  By making this payment, the paying defendant or paying relief defendant

relinquishes all legal and equitable right, title, and interest in such funds, and no part of

the funds shall be returned to the paying defendant or the paying relief defendant.  The

---

2   Relief Defendant TradeTek has been placed in an involuntary bankruptcy proceeding in this
district, in Case No. 04-13056-CJK, filed in 2004.  Any collection of this judgment against
TradeTek will be in accordance with the Bankruptcy Code and rules, for so long as that case
exists. The SEC is a regulatory agency charged with enforcing the federal securities laws, and is
proceeding against TradeTek pursuant to the police and regulatory exception to the automatic
stay set forth in §362(b)(4) of the Bankruptcy Code.

Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System ("CRIS") or any other type of interest bearing account that is utilized by the Court. These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held in the interest bearing account until further order of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission may propose a plan to distribute the Fund subject to the Court's approval. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

## VII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant T. Gene Gilman shall pay a civil penalty in the amount of $_____ pursuant to Section 20(d) of the Securities Act [15 U.S.C. 77t(d)], Sections 21(d)(3) and 21A of the Exchange Act [15 U.S.C. 78u(d)(3) and 78u-1] and Section 209(e) of the Advisers Act. Defendant T. Gene Gilman shall make this payment within ten (10) business days after entry of this Default Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying T. Gene Gilman as a defendant in this action; setting forth the title and civil action number of this

action and the name of this Court; and specifying that payment is made pursuant to this

Default Judgment.  Defendant T. Gene Gilman shall pay post-judgment interest on any

delinquent amounts pursuant to 28 USC § 1961.

## VIII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant

Steven A. Gilman shall pay a civil penalty in the amount of $_____ pursuant to

Section 20(d) of the Securities Act [15 U.S.C. 77t(d)], Sections 21(d)(3) and 21A of the

Exchange Act [15 U.S.C. 78u(d)(3) and 78u-1] and Section 209(e) of the Advisers Act.

Defendant Steven A. Gilman shall make this payment within ten (10) business days after

entry of this Default Judgment by certified check, bank cashier's check, or United States

postal money order payable to the Securities and Exchange Commission.  The payment

shall be delivered or mailed to the Office of Financial Management, Securities and

Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3,

Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Steven A.

Gilman as a defendant in this action; setting forth the title and civil action number of this

action and the name of this Court; and specifying that payment is made pursuant to this

Default Judgment.  Defendant Steven A. Gilman shall pay post-judgment interest on any

delinquent amounts pursuant to 28 USC § 1961.

## IX.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant

Arbor Securities shall pay a civil penalty in the amount of $_____ pursuant to

Section 20(d) of the Securities Act [15 U.S.C. 77t(d)], Sections 21(d)(3) and 21A of the

Exchange Act [15 U.S.C. 78u(d)(3) and 78u-1] and Section 209(e) of the Advisers Act.

Defendant Arbor Securities shall make this payment within ten (10) business days after entry of this Default Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Arbor Securities as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Default Judgment. Defendant Arbor Securities shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

## X.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant Financial Links shall pay a civil penalty in the amount of $_____ pursuant to Section 20(d) of the Securities Act [15 U.S.C. 77t(d)], Sections 21(d)(3) and 21A of the Exchange Act [15 U.S.C. 78u(d)(3) and 78u-1] and Section 209(e) of the Advisers Act. Defendant Financial Links shall make this payment within ten (10) business days after entry of this Default Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Financial Links as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this

Default Judgment.  Defendant Financial Links shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

## XI.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Default Judgment.

## XII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED**, there being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Default Judgment forthwith and without further notice.

Dated:  _____,

_____

JUDGE, UNITED STATES DISTRICT COURT