UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : | |
| : | |
| Plaintiff, : | **CIVIL ACTION** |
| : | **NO. 05-10512-REK** |
| v. : | |
| : | |
| T. GENE GILMAN, STEVEN A. GILMAN, : | |
| ARBOR SECURITIES, LTD., and : | |
| FINANCIAL LINKS, INC., : | |
| : | |
| Defendants, : | |
| : | |
| and : | |
| : | |
| TRADETEK, LTD. and : | |
| COMMONWEALTH FINANCIAL HOLDINGS, INC. : | |
| : | |
| Relief Defendants. : | |

## DEFAULT JUDGMENT AS TO DEFENDANTS T. GENE GILMAN, STEVEN A. GILMAN, ARBOR SECURITIES AND FINANCIAL LINKS, AND AS TO RELIEF DEFENDANTS TRADETEK AND COMMONWEALTH

The Securities and Exchange Commission filed its Complaint against Defendants

T. Gene Gilman, Steven A. Gilman, Arbor Securities, Ltd. ("Arbor Securities") and

Financial Links, Inc. ("Financial Links") and against Relief Defendants TradeTek, Ltd.

("TradeTek") and Commonwealth Financial Holdings, Inc. ("Commonwealth") on March

17, 2005. The SEC served the defendant Steven A. Gilman with the summons and

complaint on March 22, 2005. His answer or responsive pleading was due April 11,

2005. The SEC served the three remaining defendants and two relief defendants with the

summonses and complaint on May 25, 2005 and answers were due from them not later

than June 14, 2005. None of the defendants filed an answer or responsive pleading, and

the SEC moved for entries of default on June 17, 2005. The Clerk granted the entries of default on March 2, 2006. The SEC has now moved the Court for a default judgment by default against T. Gene Gilman, Steven A. Gilman, Arbor Securities, Financial Links, TradeTek and Commonwealth. The Court hereby grants the SEC's motion and has set forth relevant findings of fact and conclusions of law below, in addition to injunctive relief, and the imposition of disgorgement, prejudgment interest and civil penalties, where appropriate.

## **FINDINGS AND CONCLUSIONS**

Entries of default against T. Gene Gilman, Steven A. Gilman, Arbor Securities, Financial Links, TradeTek and Commonwealth were properly entered by the Clerk on March 2, 2006. The Declaration of William A. Rees, provided by the Commission establishes that from the Commission's investigation, none of the defendants or relief defendants is an infant or an incompetent. Similarly, no defendant or relief defendant in this case is a member of the military service of the United States. (Rees Declaration, ¶12). Given the failure of the six defendants to answer or otherwise defend the allegations against them, the following allegations of the SEC's Complaint are now deemed to be true, and are made the findings of this Court:

### **1)    Findings of Fact**

Between December 1998 and October 2003, T. Gene Gilman and his son Steven A. Gilman solicited approximately $20 million and misappropriated at least $14 million from approximately 40 people who invested funds with Arbor Securities, an unregistered broker-dealer which was established by and controlled by T. Gene Gilman. (Complaint, ¶ 2).

2

T. Gene Gilman operated Arbor Securities from an office in Needham, Massachusetts, and promoted the company as an offshore brokerage firm. He told prospective customers that he would establish individual brokerage accounts for them at Arbor Securities and would use their funds to trade the stocks of publicly traded U.S. companies. (Complaint, ¶ 3).

Instead of establishing individual accounts and investing clients' funds in public companies as represented, Steven A. Gilman, on behalf of Arbor Securities and with the knowledge of T. Gene Gilman, commingled and transferred customer funds into several foreign and domestic bank and brokerage accounts in the name of Arbor Securities, including accounts at defendant Financial Links. Financial Links was a registered broker-dealer that was indirectly owned and controlled by T. Gene Gilman through his holding company, Commonwealth. From these accounts, Steven A. Gilman transferred customer funds to himself, to T. Gene Gilman, and to private start-up companies that T. Gene Gilman owned and controlled, including TradeTek, a software development company. (Complaint, ¶ 4).

In order to conceal these transfers, Steven A. Gilman, on behalf of Arbor Securities and at the request of T. Gene Gilman, generated and sent to customers, fictitious account statements that purported to identify specific stocks held in their supposedly individual brokerage accounts at Arbor Securities. The false account statements also misrepresented cash balances, and falsely stated that transactions in the accounts took place, when in reality they did not. (Complaint, ¶ 5).

The false account statements contained material omissions in that they failed to indicate that customer funds had been transferred to T. Gene Gilman, to Steven A.

Gilman, or to any of T. Gene Gilman's companies. Further, the false account statements failed to accurately identify the stocks that were actually held and traded in Arbor Securities' various brokerage accounts, nor did they reveal the cash balances in those accounts or in Arbor Securities' various bank accounts. (Complaint, ¶ 6).

T. Gene Gilman, Steven A. Gilman, Arbor Securities, and Financial Links have, directly or indirectly, engaged in acts, practices, and courses of business which constituted and will constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder [15. U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]. (Complaint, ¶ 7).

Arbor Securities has, directly or indirectly, engaged in acts, practices, and courses of business which have violated, and T. Gene Gilman and Steven A. Gilman have aided and abetted its violations of, Section 15(a) of the Exchange Act [15 U.S.C. §78o(a)] and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6 (1) and (2)]. (Complaint, ¶ 8).

Financial Links has, directly or indirectly, engaged in acts, practices, and courses of business which have violated, and T. Gene Gilman and Steven A. Gilman have aided and abetted violations its of, Section 15(c) of the Exchange Act [15 U.S.C. §78o(c)]. (Complaint, ¶ 9).

Relief Defendant TradeTek has, by virtue of its conduct, directly or indirectly obtained funds to which it has no legitimate claim, and has been unjustly enriched thereby. (Complaint, ¶ 10).

4

Relief Defendant Commonwealth has, by virtue of its conduct, directly or indirectly obtained funds to which it has no legitimate claim, and has been unjustly enriched thereby. (Complaint, ¶ 11).

The Defendants, unless enjoined by this Court, will continue to engage in the acts, practices, and courses of business alleged herein, and in acts, practices and courses of business of similar purport and object. (Complaint, ¶ 12).

T. Gene Gilman, 62, resides in Newton, Massachusetts. He is the majority owner, CEO, Treasurer, and Chairman of the Board of Directors of relief defendant Commonwealth. As a registered representative and general securities principal with Financial Links, he holds Series 7 and 24 securities licenses and has over 15 years experience in the financial services industry. G. Gilman has worked at several small brokerage firms in the past. (Complaint, ¶ 17).

Steven A. Gilman, 37, is the son of G. Gilman, and resides in San Francisco, California. He was, at all relevant times, the Manager, Secretary, and President of Arbor Securities, and the Secretary for Commonwealth. S. Gilman holds a Series 7 securities license. (Complaint, ¶ 18).

Arbor Securities was incorporated in the Bahamas in November 1998. It is neither registered with the Commission as a broker-dealer or investment adviser, nor is it registered with the Securities Commission of the Bahamas in any capacity. Its registered agent is a law firm located in Nassau. Arbor Securities is controlled by T. Gene Gilman and Steven A. Gilman. (Complaint, ¶ 19).

Financial Links, is a North Carolina corporation, which is registered with the Commission as a broker-dealer. It is owned by Commonwealth, and has a branch office in Needham, Massachusetts. (Complaint, ¶ 20).

Commonwealth, is a Delaware corporation headquartered in Needham, Massachusetts. For all relevant periods, it shared office space with Financial Links. Commonwealth has no employees, and serves merely as a holding company for TradeTek and Financial Links. G. Gilman owns and controls Commonwealth, and also serves as its CEO and Treasurer. (Complaint, ¶ 21).

TradeTek, is a Delaware corporation that purportedly develops direct execution electronic trading software. TradeTek is headquartered in Needham, Massachusetts, with offices adjacent to those shared by Financial Links and Commonwealth. On April 13, 2004, one of TradeTek's creditors filed an involuntary Chapter 7 petition in this district. On May 10, 2004, the bankruptcy court entered an order for relief commencing bankruptcy proceedings. (Complaint, ¶ 22).

## 2) **Jurisdiction and Venue**

The Commission filed this action pursuant to authority conferred upon it by Sections 20(b), (c) and (d) of the Securities Act [15 U.S.C. §§ 77t(b)-(d)], Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d)-(e)] and Sections 209(d) and 209 (e) of the Advisers Act [15 U.S.C. §§ 80b-9(d)-(e)] to enjoin the defendants from engaging in the transactions, acts, practices and courses of business alleged in this Complaint, and transactions, acts, practices and courses of business of similar purport and object, for disgorgement of illegally obtained funds and other equitable relief, and for civil money penalties.

6

This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)], Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa], and Section 214 of the Advisers Act [15 U.S.C. §80b-14].

The Defendants and the Relief Defendants, directly and indirectly, have made use of the mails, the means and instrumentalities of transportation and communication in interstate commerce, and the means and instrumentalities of interstate commerce, in connection with the transactions, acts, practices, and courses of business alleged in the Complaint.

Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9], because certain of the transactions, acts, practices and courses of business constituting violations of the Securities Act, Exchange Act and Advisers Act occurred within the District of Massachusetts.

### 3) Disgorgement, Prejudgment Interest And Civil Penalties

In support of its motion for default judgment, the SEC has provided the Court with the sworn Declaration of William A. Rees, pursuant to 28 U.S.C. §1746. Rees is the SEC Branch Chief who supervised the SEC's investigation in this matter. In his declaration, Rees stated that he reviewed: A) account statements and wire transfer requests and confirmations from Penson Financial Services, Inc., the clearing broker for Financial Links; (B) documents produced by T. Gene Gilman to the U.S. Attorney's Office for the District of Massachusetts, including: (i) a detailed memorandum dated January 5, 2004, and entitled "Fraudulent Use of Funds by T. Gene Gilman," which was

7

prepared by T. Gene Gilman at the request of the U.S. Attorney's Office, and which summarizes the use of investor funds; (ii) account statements for various foreign and domestic bank and brokerage accounts held in the names, or for the benefit of, T. Gene Gilman, Steven A. Gilman, and companies that T. Gene Gilman owned and controlled, including Arbor Securities, TradeTek, Financial Links, and Commonwealth; (iii) investor lists; (iv) financial statements and accounting documentation for various companies owned and controlled by T. Gene Gilman, including Arbor Securities, TradeTek, Financial Links, and Commonwealth; and (v) written correspondence with investors and financial institutions; (C) the sworn investigative testimony of four former employees of Financial Links and TradeTek; (D) documents produced by RBC Dominion Securities, Inc., an "investment dealer" registered with the Ontario Securities Commission, including account statements for an account in the name of Arbor Securities; and (E) documents voluntarily produced to the Commission by investors in Arbor Securities, including purported account statements generated and sent to them by Steven A. Gilman. (Rees Declaration ¶ 3).

Rees's Declaration also establishes that T. Gene Gilman and Steven A. Gilman solicited and collected approximately $20 million from investors, in their scheme to defraud, and further sets forth that as described by the investors, and as summarized by T. Gene Gilman in his January 5, 2004 memorandum entitled "Fraudulent Use of Funds by T. Gene Gilman," and supported by the documents described above in the preceding paragraph, T. Gene Gilman and Steven A. Gilman commingled and transferred investor funds into several foreign and domestic bank and brokerage accounts in the name of, or for the benefit of, Arbor Securities. (Rees Declaration ¶ 4-5).

Further, the Rees Declaration establishes that from the foreign and domestic bank and brokerage accounts in the name of or for the benefit of Arbor Securities, T. Gene Gilman and Steven A. Gilman transferred or caused to be transferred approximately $9 million to relief defendant TradeTek, and transferred or caused to be transferred approximately $200,000 to relief defendant Commonwealth. Because T. Gene Gilman and Steven A. Gilman jointly exercised control over these accounts and over TradeTek, disgorgement for TradeTek should be $9 million, which it owes jointly and severally with T. Gene Gilman and with Steven A. Gilman. Similarly, disgorgement against Commonwealth should be $200,000, which it owes jointly and severally with T. Gene Gilman and Steven A. Gilman. (Rees Declaration ¶ 6).

The SEC seeks disgorgement of only a portion of the total funds raised and controlled by T. Gene Gilman, and later controlled and distributed by T. Gene Gilman and Steven A.Gilman. The Rees Declaration establishes that T. Gene Gilman and Steven A. Gilman obtained approximately $20 million from investors, which they then transferred to accounts in the name of, or for the benefit of, defendant Arbor Securities. However, from that amount, the Gilmans returned approximately $6 million to the investors, as purported returns on their investments. While the returns were not returns on investment as represented but rather a return of principal, the funds nonetheless were returned to the investors. As a result of this calculation, the total amount of disgorgement against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links should be $14 million, which is owed jointly and severally by the four defendants in this case. (Rees Declaration ¶ 7).

As set forth in the Rees Declaration, the declarant caused prejudgment interest to be calculated on the amount of $14,000,000 from November 1, 2003, through February 28, 2006, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 4% annually to a high of 7% annually). During that period, the total prejudgment interest on $14,000,000 totals $1,681,718.26, for a combined total of S15,681,718.26. This is the amount of prejudgment interest that should be ordered, jointly and severally, against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links. (Rees Declaration ¶ 9).

In the Rees Declaration, Mr. Rees also calculated prejudgment interest on the amount of $9,000,000 from November 1, 2003, through February 28, 2006, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 4% annually to a high of 7% annually). During that period, the total prejudgment interest on $9,000,000 totals $1,081,104.57, for a combined total of $10,081,104.57. This is the amount of prejudgment interest that should be ordered against relief defendant TradeTek, which it owes jointly and severally with T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links. (Rees Declaration ¶ 10).

The Rees Declaration similarly set forth a calculation of prejudgment interest on the amount of $200,000 from November 1, 2003, through February 28, 2006, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 4% annually to a high of 7% annually). During that period, the total prejudgment interest on $200,000 totals

10

$24,024.57, for a combined total of $224,024.57. This is the amount of prejudgment interest that should be ordered against relief defendant Commonwealth, which it owes jointly and severally with T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links. (Rees Declaration ¶ 11).

Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act authorizes the Court to order civil penalties against any person who has violated those acts. Given the egregious conduct of T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links, the SEC seeks civil penalties against them pursuant to Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act and Section 209(e) of the Advisers Act. First tier penalties for any violation (arising from conduct that as here, occurred after February 1, 2001) may be imposed up to the larger of $6,500 for a natural person or $60,000 for any other person, or the amount of ill-gotten gain. When the violation involves fraud, second tier penalties may be imposed up to $60,000 for a natural person or $300,000 for any other person, or the amount of the ill-gotten gain. A third tier civil penalty of up to the larger of $120,000 for a natural person or $600,000 for any other person, or the amount of ill-gotten gain may be imposed when any provision of the Securities Act or the Exchange Act is violated, if the violation involved fraud or deceit and the violation resulted in substantial losses or created a significant risk of substantial losses to other persons.[1]

---

1    Civil monetary penalties pursuant to the Securities Act and the Exchange Act are required to be adjusted for inflation. The four defendants' conduct herein occurred from 1998 through 2003, after the time that the adjustment became effective in early 2001. 17 C.F.R. 201.1001, Adjustment of civil monetary penalties - 1996. LEXSEE 66 FR 8761 at 8762. The amounts of civil monetary penalties applicable herein are, therefore, the amounts adjusted for inflation for the relevant time of the violations.

11

The Commission requests that the Court order the four defendants to pay a substantial statutory civil penalty in an amount determined by the Court, and points out that the defendants' violations clearly involved fraud and deceit and resulted in substantial losses to investors. This Court should impose statutory civil penalties against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links based upon the repeated nature of their violations, and their integral activities in the transfers of funds and the use of investor funds contrary to representations to the investors. Specifically, T. Gene Gilman misrepresented to customers that Arbor Securities would establish individual brokerage accounts on their behalf and use their funds solely to trade the stocks of publicly traded U.S. companies. For his part, on behalf of Arbor Securities and at the request of his father, Steven A. Gilman generated, and sent to customers, false account statements that purportedly identified specific stocks held in their individual brokerage accounts, as well as cash balances and periodic transactions in those accounts. However, instead of using customer funds as represented, Steven A. Gilman transferred those funds to himself, his father T. Gene Gilman, and the father's various companies. Substantial civil penalties are appropriate against the four defendants.

## INJUNCTIVE AND OTHER RELIEF

### I.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links and their agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Default Judgment, by personal service or otherwise, and each of them, be and hereby are permanently enjoined and

restrained from violating, directly or indirectly, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. 77q(a)], by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, by:

    1.    employing any device, scheme or artifice to defraud;

    2.    obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    3.    engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in the offer or sale of any security.

## II.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Default Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact   necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

## III.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant Arbor Securities, aided and abetted by T. Gene Gilman and Steven A. Gilman, and their agents, servants, employees, attorneys and those persons in active concert or participation with them, who receive actual notice of the Default Judgment, by personal service, facsimile or otherwise, and each of them, by use of the mails or any means or instrumentality of interstate commerce, are permanently restrained from directly or indirectly:

(i) from engaging in the business of effecting transactions in securities for the account of others;   (ii) from being persons other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of any national securities exchange); and, (iii) from making use of the mails or any means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) without being registered in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)];

14

in violation of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

## IV.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that

Defendant Arbor Securities, was at all relevant times an "investment adviser" within the

meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)], and that

that defendant Arbor Securities, aided and abetted by T. Gene Gilman and Steven A.

Gilman, and their agents, servants, employees, attorneys and those persons in active concert

or participation with them, who receive actual notice of the Default Judgment, by personal

service, facsimile or otherwise, and each of them, by use of the mails or any means or

instrumentality of interstate commerce, are permanently restrained from directly or

indirectly: (a) while acting knowingly or recklessly, employing devices, schemes, or

artifices to defraud any client or prospective client; or (b) engaging in transactions,

practices, or courses of business which operate as fraud or deceit upon a client or

prospective client, in violation of Sections 206(1) and 206(2) of the Advisers Act [15

U.S.C. §§ 80b-6(1),(2)].

## V.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that

defendant Financial Links was, at all relevant times, a broker or dealer as those terms are

defined by Sections 3(a)(4) and 3(a)(5) of the Exchange Act [15 U.S.C. § 78c(a)(4), (5)],

and that defendant Financial Links, aided and abetted by G. Gilman and S. Gilman, and

their agents, servants, employees, attorneys and those persons in active concert or

participation with them, who receive actual notice of the Default Judgment, by personal

service, facsimile or otherwise, and each of them, by use of the mails or any means or

instrumentality of interstate commerce, are permanently restrained from directly or
indirectly, while acting knowingly or recklessly, effecting transactions in, or inducing or
attempting to induce the purchase or sale of securities (otherwise than on a national
securities exchange of which it was a member) by means of a manipulative, deceptive, or
other fraudulent device or contrivance in violation of Section 15(c) of the Exchange Act
[15 U.S.C. §78o(c)].

## VI.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that

disgorgement against defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities
and Financial Links is joint and several to the extent that funds were transferred from
accounts in those entities' names and controlled by the Gilmans, to other accounts
controlled by the Gilmans. Further, disgorgement against T. Gene Gilman, Steven A.
Gilman, Arbor Securities and Financial Links is joint and several with TradeTek, to the
extent that funds were transferred by the Gilmans to accounts of TradeTek. Also,
disgorgement against T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial
Links is joint and several with Commonwealth, to the extent that funds were transferred
by the Gilmans to accounts of Commonwealth. Defendants T. Gene Gilman, Steven A.
Gilman, Arbor Securities and Financial Links are jointly and severally liable for
disgorgement of $14,000,000, representing investor funds gained by them as a result of
the conduct alleged in the Complaint less the amount repaid to investors, together with
prejudgment interest thereon in the amount of $1,681,718.26, for a combined total of
$15,681,718.26. Of that amount, relief defendant TradeTek is jointly and severally
liable with the four defendants for disgorgement in the amount of $9,000,000

representing the investor funds transferred, without consideration, to TradeTek as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $1,081,104.57, for a combined total of $10,081,104.57. Of the total amount of disgorgement, relief defendant Commonwealth is jointly and severally liable with the four defendants for disgorgement in the amount of $200,000 representing the investor funds transferred, without consideration, to Commonwealth as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $24,024.57, for a combined total of $224,024.57. Defendants T. Gene Gilman, Steven A. Gilman, Arbor Securities and Financial Links and Relief Defendant Commonwealth shall satisfy these joint and several obligations by paying the respective total amounts within ten (10) ten business after the entry of this Default Judgment to the Clerk of this Court,[2] together with a cover letter identifying by name the relevant paying defendant or relief defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Default Judgment. The paying defendant shall simultaneously transmit photocopies of such payment and letter to the SEC's counsel in this action, Edward G. Sullivan, Esq. at Securities and Exchange Commission, 3475 Lenox Road, NE, Suite 1000, Atlanta, Georgia 30326. By making this payment, the paying defendant or paying relief defendant relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to the paying defendant or the paying relief defendant. The

---

2 Relief Defendant TradeTek has been placed in an involuntary bankruptcy proceeding in this district, in Case No. 04-13056-CJK, filed in 2004. Any collection of this judgment against TradeTek will be in accordance with the Bankruptcy Code and rules, for so long as that case exists. The SEC is a regulatory agency charged with enforcing the federal securities laws, and is proceeding against TradeTek pursuant to the police and regulatory exception to the automatic stay set forth in §362(b)(4) of the Bankruptcy Code.

Clerk shall deposit the funds into an interest bearing account with the Court Registry

Investment System ("CRIS") or any other type of interest bearing account that is utilized

by the Court. These funds, together with any interest and income earned thereon

(collectively, the "Fund"), shall be held in the interest bearing account until further order

of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director

of the Administrative Office of the United States Courts, the Clerk is directed, without

further order of this Court, to deduct from the income earned on the money in the Fund a

fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that

authorized by the Judicial Conference of the United States. The Commission may

propose a plan to distribute the Fund subject to the Court's approval. Defendant shall pay

post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

### VII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant

T. Gene Gilman shall pay a civil penalty in the amount of $ _100,000_ pursuant to

Section 20(d) of the Securities Act [15 U.S.C. 77t(d)], Sections 21(d)(3) and 21A of the

Exchange Act [15 U.S.C. 78u(d)(3) and 78u-1] and Section 209(e) of the Advisers Act.

Defendant T. Gene Gilman shall make this payment within ten (10) business days after

entry of this Default Judgment by certified check, bank cashier's check, or United States

postal money order payable to the Securities and Exchange Commission. The payment

shall be delivered or mailed to the Office of Financial Management, Securities and

Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3,

Alexandria, Virginia 22312, and shall be accompanied by a letter identifying T. Gene

Gilman as a defendant in this action; setting forth the title and civil action number of this

action and the name of this Court; and specifying that payment is made pursuant to this Default Judgment. Defendant T. Gene Gilman shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

### VIII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant Steven A. Gilman shall pay a civil penalty in the amount of $ *100,000* /pursuant to Section 20(d) of the Securities Act [15 U.S.C. 77t(d)], Sections 21(d)(3) and 21A of the Exchange Act [15 U.S.C. 78u(d)(3) and 78u-1] and Section 209(e) of the Advisers Act. Defendant Steven A. Gilman shall make this payment within ten (10) business days after entry of this Default Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Steven A. Gilman as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Default Judgment. Defendant Steven A. Gilman shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

### IX.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant Arbor Securities shall pay a civil penalty in the amount of $ *600,000* pursuant to Section 20(d) of the Securities Act [15 U.S.C. 77t(d)], Sections 21(d)(3) and 21A of the Exchange Act [15 U.S.C. 78u(d)(3) and 78u-1] and Section 209(e) of the Advisers Act.

Defendant Arbor Securities shall make this payment within ten (10) business days after entry of this Default Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Arbor Securities as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Default Judgment. Defendant Arbor Securities shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

## X.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant Financial Links shall pay a civil penalty in the amount of $ *600,000* pursuant to Section 20(d) of the Securities Act [15 U.S.C. 77t(d)], Sections 21(d)(3) and 21A of the Exchange Act [15 U.S.C. 78u(d)(3) and 78u-1] and Section 209(e) of the Advisers Act. Defendant Financial Links shall make this payment within ten (10) business days after entry of this Default Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Financial Links as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this

Default Judgment. Defendant Financial Links shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

## XI.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Default Judgment.

## XII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED**, there being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Default Judgment forthwith and without further notice.

Dated: *June 19, 2006*

_William G. Young_
JUDGE, UNITED STATES DISTRICT COURT